## WILLY *v.* COASTAL CORP. ET AL.

No. 90–1150.   Argued December 3, 1991—Decided March 3, 1992

Rehnquist, C. J., delivered the opinion for a unanimous Court.

*Michael A. Maness* argued the cause and filed briefs for petitioner.

*Michael L. Beatty* argued the cause for respondents. With him on the brief were *Carter G. Phillips, Mark D. Hopson, Lawrence P. Ellsworth,* and *Robert C. DeMoss.*

Chief Justice Rehnquist delivered the opinion of the Court.

We granted certiorari to decide whether a federal district court may impose sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure in a case in which the district court is later determined to be without subject-matter jurisdiction. 501 U. S. 1216 (1991). We conclude that in the circumstances presented here it may do so.

Petitioner Willy sued respondent Coastal Corporation (Coastal or respondent) in Texas state court, raising a variety of claims relating to Coastal's decision to terminate his employment as "in-house" counsel. Petitioner alleged that he had been fired due to his refusal to participate in respondent's violation of various federal and state environmental laws. Respondent removed the case to Federal District Court, claiming original federal-question jurisdiction under 28 U. S. C. §§ 1331, 1441. Petitioner objected to the removal, claiming that his case did not "arise under" federal law, see § 1331, but the District Court disagreed and concluded that it had subject-matter jurisdiction. The District Court subsequently granted respondent's motion to dismiss for failure to

state a claim, Fed. Rule Civ. Proc. 12(b)(6), and dismissed petitioner's pendent state claims.

At the same time, the District Court granted respondent's motion for Rule 11 sanctions, awarding attorney's fees of $22,625 against Willy and his attorney, Young, jointly and severally. The District Court found that the filings made by plaintiff's counsel "create[d] a blur of absolute confusion." App. to Pet. for Cert. A–7. These included a 1,200-page, unindexed, unnumbered pile of materials that the District Court determined "to be a conscious and wanton affront to the judicial process, this Court, and opposing counsel" that was "irresponsible at a minimum and at worst intentionally harassing." *Ibid.* Petitioner's sanctionable behavior also included careless pleading, such as reliance on a nonexistent Federal Rule of Evidence. *Ibid.* None of the sanctionable conduct was related to petitioner's initial effort to convince the District Court that it was without subject-matter jurisdiction.

On appeal, the Court of Appeals for the Fifth Circuit concluded that the District Court had lacked subject-matter jurisdiction because the complaint raised no claims arising under federal law. 855 F. 2d 1160 (1988). It therefore reversed the District Court order dismissing the claims and instructed that the case be remanded to state court. The court also upheld the District Court's decision to award Rule 11 sanctions, although it remanded the case to the District Court to determine the amount. On remand the District Court recomputed the Rule 11 sanctions and imposed sanctions in the amount of $19,307, the amount of attorney's fees that respondent had incurred in responding to petitioner's sanctionable conduct. The Court of Appeals affirmed. 915 F. 2d 965 (CA5 1990).

On this second appeal, the Court of Appeals rejected petitioner's contention that, in the absence of subject-matter jurisdiction, the District Court was constitutionally without

authority to impose Rule 11 sanctions. It concluded that the authority to impose Rule 11 sanctions rested in the "inherent powers" of the federal courts—those powers " 'necessary to the exercise of all others.'" *Id.*, at 966 (quoting *Roadway Express, Inc.* v. *Piper*, 447 U. S. 752, 764 (1980)). The court concluded that the exercise of Rule 11 powers was an example of such inherent powers. It principally relied on our recent decision in *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384 (1990), in which we upheld a Rule 11 sanction imposed for filing a frivolous complaint even though the sanction order was entered after the plaintiff voluntarily dismissed its suit.

Before this Court, petitioner advances two claims. The first is that Congress, in acquiescing in the adoption of the Federal Rules of Civil Procedure, did not "authoriz[e] recovery of fees or costs against parties who prevail on jurisdictional grounds." Brief for Petitioner 18. Petitioner finds in both the Rules Enabling Act and the Rules the "implicit premise . . . that rules of practice and procedure are not necessary for disputes beyond the judicial power conferred by Article III." *Id.*, at 28. Phrased this way, the petitioner's contention is correct, but it does not dispose of this case.

The Rules Enabling Act, 28 U. S. C. § 2072, authorizes the Court to "prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts . . . ." Those rules may not "abridge, enlarge or modify any substantive right." In response, we have adopted the Federal Rules of Civil Procedure. Rule 1 governs their scope. It provides that "[t]hese rules govern the procedure in the United States district courts in all suits of a civil nature . . . ." Rule 81(c) specifically provides that the Rules "apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal." This expansive language contains no express ex-

ceptions and indicates a clear intent to have the Rules, including Rule 11, apply to all district court civil proceedings.[1]

But in *Sibbach* v. *Wilson & Co.*, 312 U. S. 1 (1941), we observed that federal courts, in adopting rules, were not free to extend or restrict the jurisdiction conferred by a statute. *Id.*, at 10. Such a caveat applies *a fortiori* to any effort to extend by rule the judicial power of the United States described in Article III of the Constitution. The Rules, then, must be deemed to apply only if their application will not impermissibly expand the judicial authority conferred by Article III. We must therefore examine petitioner's second, and related contention, that the District Court action in this case lies outside the range of action constitutionally permitted to an Article III court.

Petitioner begins by pointing out that Article III limits the subject-matter jurisdiction of the federal courts to certain "cases or controversies." Brief for Petitioner 11. He then contends that the District Court's exercise of judicial power to grant Rule 11 sanctions must have been an unconstitutional act because, in the absence of subject-matter ju-

---

[1] Rule 11 requires that every paper filed with the District Court be signed by an attorney or by the party. The signature constitutes a certificate by the signer that

"to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

A pleading determined to be in contravention of the Rule subjects both the signer and the party he represents to "an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." *Ibid.* We take as given that the District Court correctly determined that petitioner's filings were insufficiently well grounded to satisfy the Rule, the payment of attorney's fees was a reasonable sanction in response, and the imposition of joint and several liability was appropriate.

risdiction, the district court lacks "a substantive source of judicial power, beyond that conferred by Article III." *Id.*, at 18. Thus, according to petitioner, even had Congress attempted to grant the courts authority to impose sanctions in a case such as this, the grant would run afoul of Article III.

In making this claim, petitioner acknowledges that there are some circumstances in which federal courts may impose attorney's fees or costs, even where the court eventually proves to be without subject-matter jurisdiction.[2] He contends, however, that such instances are limited to a narrowly prescribed category of cases and do not include the situation in which sanctions are imposed against a party who has successfully contested jurisdiction.

We think petitioner's contentions flawed in several respects. Article I, § 8, cl. 9, authorizes Congress to establish the lower federal courts. From almost the founding days of this country, it has been firmly established that Congress, acting pursuant to its authority to make all laws "necessary and proper"[3] to their establishment, also may enact laws regulating the conduct of those courts and the means by which their judgments are enforced. See *Wayman* v. *Southard*, 10 Wheat. 1, 21–22 (1825); *Hanna* v. *Plumer*, 380 U. S. 460, 473 (1965) (describing "long-recognized power of Congress to prescribe housekeeping rules for federal courts"). Indeed, in acknowledging the many circumstances in which sanctions can be imposed, several of which have a statutory basis, petitioner effectively concedes both Congress' general power to regulate the courts and its specific

---

[2] See Brief for Petitioner 18, n. 14, acknowledging 28 U. S. C. § 1919 (authorizing "payment of just costs" in any action or suit dismissed for lack of jurisdiction) and 28 U. S. C. § 1447(c) (authorizing attorney's fees and costs for wrongful removal). See also Brief for Petitioner 22–27, admitting federal-court authority to exercise "inherent powers" to sanction through attorney's fees and costs or criminal contempt those who obstruct a court's effort to determine its jurisdiction.

[3] Art. I, § 8, cl. 18.

power to authorize the imposition of sanctions. See n. 2, *supra*.

This leaves only petitioner's contention that Rule 11 sanctions must be aborted because at a time after the sanctionable conduct occurred, it was determined by the Court of Appeals that the District Court lacked subject-matter jurisdiction. A final determination of lack of subject-matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it. But such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction. In *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U. S. 371 (1940), we held that a judgment rendered in a case in which it was ultimately concluded that the District Court was without jurisdiction was nonetheless res judicata on collateral attack made by one of the parties. See also *Stoll* v. *Gottlieb*, 305 U. S. 165 (1938). In *Stoll*, we observed that the practical concern with providing an end to litigation justifies a rule preventing collateral attack on subject-matter jurisdiction. *Id.*, at 172.

In *United States* v. *Mine Workers*, 330 U. S. 258 (1947), we upheld a criminal contempt citation even on the assumption that the District Court issuing the citation was without jurisdiction over the underlying action. In that case, the question was raised on direct review and not collateral attack. We think the same concern expressed in these cases—the maintenance of orderly procedure, even in the wake of a jurisdiction ruling later found to be mistaken—justifies the conclusion that the sanction ordered here need not be upset.

The District Court order which the petitioner seeks to upset is one that is collateral to the merits. We recently had occasion to examine Rule 11's scope and purpose in great detail in *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384 (1990). The challenge in that case was to an order imposing Rule 11 sanctions for filing a frivolous complaint, entered

after the plaintiff had voluntarily dismissed his action. In the course of our discussion we noted that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending. . . . [An] imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.*, at 395–396. Such an order implicates no constitutional concern because it "does not signify a district court's assessment of the legal merits of the complaint." *Id.*, at 396. It therefore does not raise the issue of a district court adjudicating the merits of a "case or controversy" over which it lacks jurisdiction.

Petitioner places great weight on our decision in *United States Catholic Conference* v. *Abortion Rights Mobilization, Inc.*, 487 U. S. 72 (1988), a case involving a civil contempt order entered by the District Court. The contemnors, two nonparty witnesses, refused to comply with a District Court document subpoena. The District Court found them in civil contempt and ordered them to pay a fine of $50,000 per day. The contemnors, as was their right, immediately appealed the contempt order, challenging the District Court's subject-matter jurisdiction. We held that the Court of Appeals was obligated to consider the jurisdictional challenge in full, rather than simply contenting itself with an inquiry into whether the District Court colorably had jurisdiction. We further concluded that if the District Court was found to be lacking subject-matter jurisdiction, that the contempt order would also fall. Focusing on this second part of our decision, petitioner cites *Catholic Conference* as establishing the proposition that a sanction must fall if imposed when jurisdiction is in fact absent.[4]

*Catholic Conference* does not stand for such a broad assertion. A civil contempt order has much different purposes

---

[4] Petitioner does acknowledge certain limited exceptions, see n. 2, *supra.*

than a Rule 11 sanction. Civil contempt is designed to force the contemnor to comply with an order of the court, *id.*, at 79; Rule 11 is designed to punish a party who has already violated the court's rules. *Cooter & Gell, supra*, at 396. Given that civil contempt is designed to coerce compliance with the court's decree, it is logical that the order itself should fall with a showing that the court was without authority to enter the decree. Accord, *United States* v. *Mine Workers, supra.*

The interest in having rules of procedure obeyed, by contrast, does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction. Courts do make mistakes; in cases such as *Catholic Conference* it may be possible immediately to seek relief in an appellate tribunal. But where such an immediate appeal is not authorized, there is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedural rules in the interim, and to allow the courts to impose Rule 11 sanctions in the event of their failure to do so.[5]

For the foregoing reasons, the judgment of the Court of Appeals is

*Affirmed.*

---

[5] Our conclusion that the District Court acted within the scope of the Federal Rules and that the sanction may constitutionally be applied even when subject-matter jurisdiction is eventually found lacking makes it unnecessary for us to consider respondent's alternative contention that the sanction may be upheld as an appropriate exercise of the District Court's "inherent powers."