446

Eliza HUNTER and Lakisha
Hunter, Plaintiffs,

v.

BENEFICIAL NATIONAL BANK
USA;  et al., Defendants.

Lucille COLEMAN and Cilestine
Davis, Plaintiffs,

v.

BENEFICIAL NATIONAL BANK
USA;  et al., Defendants.

Catherine SAMUEL, Plaintiff,

v.

BENEFICIAL NATIONAL BANK
USA;  et al., Defendants.

Essie HAWKINS, Plaintiff,

v.

BENEFICIAL CORPORATION;
et al., Defendants.

Alberta POWELL, Plaintiff,

v.

BENEFICIAL NATIONAL BANK
USA;  et al., Defendants.

Edna L. WHIGHAM, Plaintiff,

v.

BENEFICIAL NATIONAL BANK
USA;  et al., Defendants.

Dorothy BRUNDIDGE, Plaintiff,

v.

BENEFICIAL CORPORATION;
et al., Defendants.

Patrick JACKSON, Plaintiff,

v.

BENEFICIAL CORPORATION;
et al., Defendants.

Civil Action Nos. 96–T–1202–N, 96–T–1203–
N, 96–T–1204–E, 96–T–1205–N, 96–T–
1206–E, 96–T–1207–N, 96–T–1216–E and
96–T–1217–E.

United States District Court,
M.D. Alabama,
Northern and Eastern Divisions.

Sept. 26, 1996.

Jere L. Beasley, Thomas James Methvin, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, for Eliza P. Hunter in No. 96–T–1202–N, Catherine Samuel in No. 96–T–1204–E, Alberta Powell in No. 96–T–1206–E, Edna L. Whigham in No. 96–T–1207–N, Dorothy Brundidge in No. 96–T–1216–E, Patrick Jackson in No. 96–T–1217–E.

Thomas James Methvin, Beasley, Wilson, Allen, Main & Crow, P.C., Mongomery, AL, for Lakisha Hunter in No. 96–T–1202–N.

A. Inge Selden, III, Clement C. Torbert, Jr., Peter S. Fruin, Maynard, Cooper & Gale, P.C., Montgomery, AL, Carl Stanley Burkhalter, Maynard, Cooper & Gale, P.C., Birmingham, AL, Alan S. Kaplinsky, Steven A. Arbittier, Robert McL. Boote, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Beneficial National Bank USA in Nos. 96–T–1202–N, 96–T–1203–N, 96–T–1204–E, 96–T–1205–N, 96–T–1206–E, 96–T–1216–E.

Jere L. Beasley, Thomas James Methvin, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, Jerry L. Thornton, Hayneville, AL, for Lucille Coleman, Cilestine Davis, in No. 96–T–1203–N.

A. Inge Selden, III, Clement C. Torbert, Jr., Peter S. Fruin, Maynard, Cooper & Gale, P.C., Montgomery, AL, Carl Stanley Burkhalter, Maynard, Cooper & Gale, P.C., Birmingham, AL, Steven A. Arbittier, Robert McL. Boote, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Beneficial Corporation in No. 96–T–1203–N, 96–T–1205–N, 96–T–1207–N, 96–T–1216–E.

A. Inge Selden, III, Clement C. Torbert, Jr., Peter S. Fruin, Maynard, Cooper & Gale, P.C., Montgomery, AL, Carl Stanley Burkhalter, Maynard, Cooper & Gale, P.C., Birmingham, AL, Robert McL. Boote, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Beneficial Corporation in No. 96–T–1217–E.

Lewis B. Hickman, Jr., Montgomery, AL, for Satellite Connections, Inc. in No. 96–T–1203–N.

Johnny Hardwick, Montgomery, AL, for C.A.M.P. Unlimited, Inc., Maurice Stinson, in No. 96–T–1204–E.

Donald J. McKinnon, Don McKinnon's Law Office, Eufaula, AL, Jere L. Beasley, Thomas James Methvin, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, for Essie Hawkins, in No. 96–T–1205–N.

Cableview, Inc., Steve Jackson, Montgomery, AL, pro se, in No. 96–T–1205–N.

Edward P. Turner, Jr., Halron W. Turner, Turner, Onderdonk, Kimbrough & Howell, P.A., Chatom, AL, for Best Reception Systems, Inc., in No. 96–T–1205–N.

C.A.M.P. Unlimited, Inc., Leon C. Allen, Montgomery, AL, pro se in No. 96–T–1206–E.

C.A.M.P. Cable Concepts, Inc., Leon C. Allen, Montgomery, AL, pro se in No. 96–T–1206–E.

Maurice Stinson, Montgomery, AL, pro se in No. 96–T–1206–E.

Michael S. Jackson, Beers, Anderson, Jackson & Smith, P.C., Montgomery, AL, for Shirley Benton, Valerie Powell, in No. 96–T–1207–N.

Dennis R. Bailey, Robert Charles Ward, Jr., Rushton, Stakely, Johnston & Garrett, Montgomery, AL, for Beltone Hearing Instruments Center, Michael Hunt, in No. 96–T–1216–E, 96–T–1217–E.

## ORDER

MYRON H. THOMPSON, Chief Judge.

The issue before the court is whether these lawsuits, in which defendants are charged by a number of Alabama consumers with having fraudulently failed to disclose interest and discount information in certain commercial financing transactions, were properly removed from state to federal court based on "complete pre-emption" under the National Bank Act of 1864, as amended, 12 U.S.C.A. §§ 85–86.

### I.

Plaintiffs filed these lawsuits in the Circuit Courts of Barbour, Bullock, Lowndes and Macon County, Alabama in January and July 1996. They named the following as defendants: Beneficial National Bank USA; Beneficial Corporation; Beltone Hearing Instruments Center; Cableview, Inc.; Best Receptions Systems, Inc.; Satellite Connections, Inc.; C.A.M.P. Unlimited, Inc.; C.A.M.P. Cable Concepts, Inc.; Otis L. Barnett d/b/a Prime Time Cable Satellite Systems; Shirley Benton d/b/a Benton Satellite Sales & Service; Mary Ponders; Valerie Powell; Maurice Stinson; and Michael Hunt. Plaintiffs charge defendants with fraud in connection with the purchasing and financing of hearing aids, satellite systems, and satellite dishes. Defendants removed these lawsuits from state to federal court in July and August 1996. Defendants base removal on original "federal question" jurisdiction, 28 U.S.C.A. §§ 1331, 1441. Defendants maintain that removal is proper because there is "complete pre-emption" under the National Bank Act.

The National Bank Act provides, in part, that "Any association may ... charge on any loan ... *interest at the rate* allowed by the laws of the State ... where the bank is located." 12 U.S.C.A. § 85 (emphasis added). The Act further provides for penalties for violating this interest limitation, including "forfeiture of the entire interest," 12 U.S.C.A. § 86, and the right to "recover back, in an action in the nature of an action of debt, twice the amount of interest thus paid from the association taking or receiving the same period." *Id.* The Comptroller of Currency has adopted a regulation defining the term "interest" to include the following: "any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended"; and, with regard to "fees connected with credit extension or availability[,] ... numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees." 12 C.F.R. § 7.4001(a).

Defendants argue that, in their state-law claims, plaintiffs are essentially challenging the interest charged by Beneficial National Bank USA, a national bank within the meaning of the National Bank Act. Defendants further argue that, because the state-law claims are actually challenges to the interest rates of a national bank, the claims are "completely pre-empted" by the National Bank Act and thus are subject to removal based on federal-question jurisdiction.

The plaintiffs have responded with motions to remand these lawsuits back to state court. Plaintiffs contend that removal is improper for two reasons: first, their state-law claims are not challenges to the interest rates charged by Beneficial National Bank USA or any other defendant; and, second, §§ 85 and 86 of the National Bank Act do not provide for "complete pre-emption."

### II.

As this court recently explained in *Kenney v. Farmers National Bank of Opelika*, 938 F.Supp. 789, 791–92 (M.D.Ala.1996), § 1331 provides for federal-question jurisdiction in

"a civil action arising under the Constitution, laws, or treaties of the United States." Whether a complaint "arises under" federal law—or, put another way, presents a "federal question"—must be determined from the face of a plaintiff's complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–11, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). This requirement, which is known as the "well-pleaded complaint" rule, applies to a defendant's right to removal, with the determinative factor being whether the plaintiff's complaint and not the removal petition presents a federal question. *Id.* at 10 n. 9, 103 S.Ct. at 2847 n. 9. Moreover, the plaintiff "is master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), and thus has the prerogative to rely on state law alone, although both state and federal law may give him a cause of action. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (the plaintiff "may avoid federal jurisdiction by exclusive reliance on state law"). Therefore, the fact that the plaintiff has elected to pursue his claim under state law alone does not justify removal even if the plaintiff also has an unpursued claim under federal law.

To be sure, as this court continued in *Kenney,* there is an exception to the well-pleaded complaint rule. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. This exception is known as the "complete pre-emption" doctrine. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* This exception rests on the notion that in certain rare instances "the pre-emptive force of the statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). Because a state-law claim that is completely pre-empted arises under federal law, it is removable from state to federal court.

Complete pre-emption differs greatly from simple pre-emption. For example, in *Barnett Bank of Marion County v. Nelson,* —— U.S. ——, ——, 116 S.Ct. 1103, 1106, 134 L.Ed.2d 237 (1996), the Supreme Court held that "a federal statute that permits national banks to sell insurance in small towns pre-empts a State statute that forbids them to do so." The Court posited that, "This question is basically one of congressional intent. Did Congress, in enacting the Federal Statute, intend to exercise its constitutionally delegated authority to set aside the laws of a State?" *Id.* at ——, 116 S.Ct. at 1107. The Court then instructed that the answer should be pursued as follows:

"Sometimes courts, when facing the pre-emption question, find language in the federal statute that reveals an explicit congressional intent to pre-empt state law. *E.g., Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 530–531, 97 S.Ct. 1305, 1309–1310, 1312–1313, 51 L.Ed.2d 604 (1977). More often, explicit pre-emption language does not appear, or does not directly answer the question. In that event, courts must consider whether the federal statute's 'structure and purpose,' or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent. *Id.,* at 525, 97 S.Ct. at 1309–1310; *Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 152–153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). A federal statute, for example, may create a scheme of federal regulation 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Alternatively, federal law may be in 'irreconcilable conflict' with state law. *Rice v. Norman Williams Co.,* 458 U.S. 654, 659, 102 S.Ct. 3294, 3298–3299, 73 L.Ed.2d 1042 (1982). Compliance with both statutes, for example, may be a 'physical impossibility,' *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963); or, the state law may 'stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

*Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)."

*Barnett Bank,* —— U.S. at ——, 116 S.Ct. at 1107–08. Demanding though this approach may be, the one for complete pre-emption is even more so.

Finally, as stated in *Kenney,* the Supreme Court has found "complete pre-emption" of state-law claims, with the result that these claims are removable to federal court, in a very few instances—for example, § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, commonly referred to as the LMRA, *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); and § 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1132, commonly referred to as ERISA, *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In *Avco Corp.* and *Taylor* and in the cases that followed them, three factors have been identified as critical to a finding of complete pre-emption. First and perhaps most importantly, because "the touchstone of the federal district court's removal jurisdiction is ... the intent of Congress," *Taylor,* 481 U.S. at 66, 107 S.Ct. at 1548, the courts have concluded that there should be evidence of a congressional intent to make the state claim falling within the scope of the relevant federal statute removable to federal court. In *Taylor,* the Supreme Court found a congressional intent to allow removal of ERISA cases in the legislative history's statement that "All such actions in Federal or State courts are to be regarded as arising under the laws of the United States." 481 U.S. at 65–66, 107 S.Ct. at 1547 (quoting H.R.Conf.Rep. No. 93–1280 at 327 (1974)). *See also Id.* at 68, 107 S.Ct. at 1548 (Brennan, J., concurring) ("In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court") (emphasis in original); *Robinson v. Michigan Consol. Gas Co.,* 918 F.2d 579, 586 (6th Cir.1990) (there must be evidence of clear congressional intent to permit removal despite plaintiff's exclusive reliance on state law); *Allstate Ins. Co. v. 65 Sec. Plan,* 879 F.2d 90, 93 (3rd Cir.1989) (same); *Aaron v.*

*National Union Fire Ins. Co. of Pittsburg,* 876 F.2d 1157, 1163 (5th Cir.1989) (same), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990).

■ Second, it is not sufficient that the federal law pre-empt the state law claim; the federal law must also "displace" the state law claim with a cause of action. In *Taylor,* the Supreme Court found complete pre-emption because the "state common law claims are not only pre-empted by ERISA but also displaced by ERISA's civil enforcement provision." 481 U.S. at 60, 107 S.Ct. at 1544. *See also Allstate Ins. Co. v. 65 Sec. Plan,* 879 F.2d at 93 ("The doctrine of complete pre-emption applies only ... when the enforcement provisions of a federal statute create a federal cause of action vindicating the same interest that the plaintiff's cause of action seeks to vindicate"); *Willy v. Coastal Corp.,* 855 F.2d 1160, 1165 (5th Cir.1988) ("a federal action cannot be found to so completely displace state claims ... unless there would have been a federal cause of action under the pre-empting federal law"), *aff'd on other grounds,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992).

■ Third and finally, the jurisdictional and enforcement provisions in the LMRA or ERISA must have a close parallel in the federal claims at issue. In *Taylor,* the Supreme Court emphasized that, even with ERISA's extensive civil enforcement provisions, it "would be reluctant to find that extraordinary pre-emptive power," 481 U.S. at 65, 107 S.Ct. at 1547, but for the fact that ERISA's civil enforcement provision paralleled those in the LMRA, a statute where the Court had previously found such power. *Id.*

Defendants point to several cases holding that §§ 85 and 86 of the National Bank Act both "pre-empt" and "completely pre-empt" state-law claims challenging "interest" charged by a nationally chartered bank, and thus that such claims are removable from state to federal court. *See, e.g., M. Nahas & Co. v. First National Bank,* 930 F.2d 608 (8th Cir.1991); *Moss v. Southtrust Mobile Services,* civil action no. 95–P–1647–W (N.D.Ala. Sept. 22, 1995) (Pointer, J.); *Hunter v. Rich's Department Store,* 938 F.Supp.

789 civil action no. 95–PT–1548–S (N.D.Ala. Aug. 31, 1995) (Propst, J.). Plaintiffs point to cases to the contrary. *See, e.g., Spellman v. Meridian Bank,* —— F.3d ——, 1995 WL 764548 (3rd Cir. Dec. 29, 1995).[1]

However, whether §§ 85 and 86 of the National Bank Act completely pre-empt a state-law claim challenging the interest of a national bank is a difficult issue this court need not reach.

### III.

■ Plaintiffs contend that they are making only a fraud claim, that is, that defendants fraudulently failed to disclose certain charges for interest and discounts, presumably in violation of §§ 6–5–100 through 6–5–104 of the 1975 Alabama Code (Michie 1993).[2] Plaintiffs maintain that they are not claiming that "interest was too high" or that there was "an interest rate overcharge."[3] Indeed, they "concede" that the interest, disclosed and allegedly non-disclosed, was not excessive and in violation of state law regulating interest rates.[4]

■ Defendants respond that plaintiffs are actually claiming not only a "hidden" interest or discount but are also claiming an "excessive" financial charge or interest rate.[5] The court presumes that defendants mean "excessive" in the sense that the rate violates Ala-

bama law. However, a party seeking removal has the burden of establishing federal jurisdiction. *Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368, 1371 (9th Cir.), *cert. denied,* 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987); *Brech v. Prudential Ins. Co. of America,* 845 F.Supp. 829, 831 (M.D.Ala.1993). "Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand." *Brech,* 845 F.Supp. at 831; *see Shamrock Oil and Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Butler v. Polk,* 592 F.2d 1293, 1296 (5th Cir.1979).[6] Here, therefore, defendants have the burden of showing that plaintiffs are, in fact, claiming excessive interest rates in violation of some state law.

■ As stated, the National Bank Act provides that "Any association may ... charge on any loan ... *interest at the rate* allowed by the laws of the State ... where the bank is located." 12 U.S.C.A. § 85 (emphasis added). Although the term "rate" should not be given a "narrow meaning," *Smiley v. Citibank (South Dakota), N.A.,* —— U.S. ——, ——, 116 S.Ct. 1730, 1736, 135 L.Ed.2d 25 (1996), the term must have some meaning, and the statute does not address interest in general.[7] Defendants, however, have presented absolutely nothing to support any con-

---

**1.** A rehearing en banc has been granted by the Third Circuit Court of Appeals. The order granting the rehearing has not been published yet.

**2.** Plaintiffs' brief filed on August 9, 1996, at 4–5 in civil action no. 96–T–1202–N, and plaintiffs' briefs filed on August 21, 1996, at 5 in all the other cases.

**3.** *Id.*

**4.** *Id.*

**5.** Defendants' brief filed on August 26, 1996, at 3–5 in civil action no. 96–T–1202–N, and defendants' briefs filed on September 19, 1996, at 3–5 in all the other cases.

**6.** The Eleventh Circuit Court of Appeals has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**7.** In *Smiley,* the Supreme Court agreed with the Comptroller of Currency's definition of "inter-

est." —— U.S. at ——, 116 S.Ct. at 1732. The definition is codified at 12 C.F.R. § 7.4001, which in its entirety is as follows:

"(a) Definition. The term "interest" as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

"(b) Authority. A national bank located in a state may charge interest at the maximum rate permitted to any state-chartered or licensed lending institution by the law of that state. If state law permits different interest charges on

tention that the total interest (that which was disclosed and that which was allegedly not disclosed) or the "interest rate" is arguably excessive in violation of any state law; nor have they identified a state law regulating interest rates—for example, the Alabama Mini Code, § 5–17–18 Alabama Code 1975—that arguably has been violated. Because, on the present record, it appears that plaintiffs' state-law claims do not fall within the coverage of §§ 85 and 86 of the National Bank Act, the claims cannot be completely pre-empted by the Act. *See Kenney,* 938 F.Supp. at 793–94 (because insurance premiums on mortgage not covered by §§ 85 and 86 of the National Bank Act, court did not reach whether the Act pre-empted claims challenging such premiums).

As stated, a plaintiff "is master to decide what law he will rely upon," *Kohler Die & Specialty Co.,* 228 U.S. at 25, 33 S.Ct. at 411, and thus has the prerogative to rely upon any particular theory of law although there are other theories which may give him a cause of action. Therefore, the fact that plaintiffs here have elected to pursue their claims under theories of fraud does not justify removal even if plaintiffs also have unpursued claims that the interest charged by defendants is excessive.

## IV.

With this conclusion, however, this court has *not* held that plaintiffs' state-law claims are not "pre-empted" by the National Bank Act. This court has merely held that there is not such "complete pre-emption" as would support removal of all these cases to federal

court. After remand, the state courts may still independently conclude that plaintiffs' claims are, in fact, excessive interest claims and that §§ 85 and 86 of the National Bank Act apply to and pre-empt these claims. *Glasser v. Amalgamated Workers Union Local 88,* 806 F.2d 1539, 1540 (11th Cir.1986) (per curiam); *Soley v. First Nat'l Bank of Commerce,* 923 F.2d 406, 408–09 (5th Cir. 1991); *Kenney,* 938 F.Supp. at 794; *see also Franchise Tax,* 463 U.S. at 12–14 & n. 12, 103 S.Ct. at 2848 & n. 12 (where federal court lacks removal jurisdiction, state court should determine whether pre-emption defense has merit). This court has looked at these cases from the front-end only; whereas, the state courts must wrestle with them through all their stages.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that the motions to remand, filed by plaintiffs on August 9 and 20, 1996, are granted and that all of the above-styled lawsuits are remanded to the Circuit Courts of Barbour, Bullock, Lowndes and Macon County, Alabama, pursuant to 28 U.S.C.A. § 1447(c).

It is further ORDERED that all other pending motions filed by the defendants are left for disposition by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand of all these cases.

specified classes of loans, a national bank making such loans is subject only to the provisions of state law relating to that class of loans that are material to the determination of the permitted interest. For example, a national bank may lawfully charge the highest rate permitted to be charged by a state-licensed small loan company, without being so licensed, but subject to state law limitations on the size of loans made by small loan companies.

"(c) Effect on state definitions of interest. The Federal definition of the term "interest" in paragraph (a) of this section does not change how interest is defined by the individual states (nor how the state definition of interest is used) solely for purposes of state law. For example, if late fees are not "interest" under state law where a national bank is located but state law permits its most favored lender to charge late

fees, then a national bank located in that state may charge late fees to its intrastate customers. The national bank may also charge late fees to its interstate customers because the fees are interest under the Federal definition of interest and an allowable charge under state law where the national bank is located. However, the late fees would not be treated as interest for purposes of evaluating compliance with state usury limitations because state law excludes late fees when calculating the maximum interest that lending institutions may charge under those limitations.

"(d) Usury. A national bank located in a state the law of which denies the defense of usury to a corporate borrower may charge a corporate borrower any rate of interest agreed upon by a corporate borrower."