2001 OK CIV APP 13

**PEZOLD, RICHEY, CARUSO & BARKER, a partnership of professional corporations, Plaintiff/Appellee,**

v.

**CHEROKEE NATION INDUSTRIES INC., an Oklahoma corporation, Cherokee Nation Enterprises, an Oklahoma corporation, Defendants,**

**and**

**The Cherokee Nation, a federally recognized Indian Tribe, Defendant/Appellant.**

**No. 94,054.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 1, 2000.

Rehearing Denied Sept. 29, 2000.

Certiorari Denied Jan. 9, 2001.

Dennis A. Caruso, Joseph C. Woltz, Joel L. Wohlgemuth, Thomas M. Ladner, Tulsa, OK, for Plaintiff/Appellee.

Julian K. Fite, Tahlequah, OK, John G. Ghostbear, Tulsa, OK, for Defendant/Appellant.

## OPINION

HANSEN, V.C.J.:

¶ 1 Defendant/Appellant, Cherokee Nation, seeks review of the trial court's order granting judgment against it and in favor of Plaintiff/Appellee, Pezold, Richey, Caruso & Barker (Pezold), for attorney fees as discovery sanctions. We reverse, holding Cherokee Nation's sovereign immunity protects it from a state court's exercise of inherent powers.

¶ 2 Pezold, a law firm, sued Cherokee Nation in state district court to recover fees arising from its representation of the tribe in certain commercial matters. Cherokee Nation specially entered its appearance and moved to dismiss, claiming sovereign immunity. The trial court denied the motion and the parties proceeded with discovery. Pezold moved to compel Cherokee Nation to produce certain documents and later sought sanctions against Cherokee Nation for discovery violations. On November 11, 1997, the trial court granted Pezold's motion for sanctions and directed it to file an application for fees and costs connected with its motion to compel, motion for sanctions, and its search for the documents Cherokee Nation failed to produce.

¶ 3 On May 26, 1998, the U.S. Supreme Court handed down its decision in *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), holding Indian tribes enjoy immunity from suit on contracts, whether the contracts involve governmental or commercial activities and whether they were made on or off a reservation. Cherokee Nation again moved for dismissal based on sovereign immunity. Pezold agreed to dismissal without prejudice but asserted its right to recover under the sanction order continued. The trial court agreed and heard Pezold's application for attorney fees and costs.

¶ 4 On November 17, 1999, the trial court entered a judgment for Pezold against Cherokee Nation in the amount of $32,688.40 as fees and costs resulting from Cherokee Nation's discovery violations. Cherokee Nation appeals from that order, contending the trial court lacked authority to impose sanctions against it because (1) the U.S. Constitution and federal case law reserve to the federal government plenary authority over it, and (2) it possesses federal common law immunity from suit.

¶ 5 Pezold responds the court's inherent power to sanction abusive litigation practices is not lost simply because a case is ultimately dismissed for lack of subject matter jurisdiction, citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992). In *Willy*, a former employee sued his employer for wrongful discharge, and the employer removed the action to federal court. The court dismissed the action for failure to state a claim and imposed Rule 11 sanctions based on conduct in the case. On appeal, the Fifth Circuit Court of Appeals determined the district court lacked subject matter jurisdiction but upheld the sanctions award. In a second appeal, the Fifth Circuit concluded a federal court could exercise its inherent power in imposing Rule 11 sanctions even in the absence of subject-matter jurisdiction. The U.S. Supreme Court affirmed, stating,

A final determination of lack of subject-matter jurisdiction of a case in a federal court, of course, precludes further adjudication of it. But such a determination does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction.

503 U.S. at 137, 112 S.Ct. 1076.

¶ 6 The facts in *Willy* did not, however, implicate sovereign immunity. In *U.S. v. Horn*, 29 F.3d 754 (1st Cir.1994), the Court confronted the conflict between the doctrines of sovereign immunity and inherent or supervisory power. The federal district court had assessed attorney fees and costs against the United States for "egregious acts of prosecutorial misconduct" in a criminal prosecution. *Id.* at 770. The government appealed, contending sovereign immunity prohibited the award of fees and costs against it. The First

Circuit agreed and reversed the award, stating,

> [W]e believe that sovereign immunity ordinarily will trump supervisory power in a head-to-head confrontation. The critical determinant is that the doctrines are of fundamentally different character: supervisory powers are discretionary and carefully circumscribed; sovereign immunity is mandatory and absolute. Consequently, whereas the former may be invoked in the absence of an applicable statute, the latter must be invoked in the absence of an applicable statute; and whereas the former may be tempered by a court to impose certain remedial measures and to withhold others, the latter must be applied mechanically, come what may. In other words, unlike the doctrine of supervisory power, the doctrine of sovereign immunity proceeds by fiat: if Congress has not waived the sovereign's immunity in a given context, the courts are obliged to honor that immunity.

Id. at 764.[1]

¶ 7 *Horn* involved the sovereign immunity of the federal government, whereas here the sovereign immunity of a tribe is invoked. However, under *Kiowa Tribe*, 523 U.S. at 754, 118 S.Ct. at 1702, we are similarly bound to honor that immunity in the absence of Congressional or tribal waiver. Therefore, we hold Cherokee Nation's sovereign immunity protects it from a state court's exercise of inherent powers.

¶ 8 Pezold cites *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65 (3d. Cir.1995), *Omaha Indian Tribe v. Tract I*, 933 F.2d 1462, 1471 (8th Cir.1991), and *U.S. v. Gavilan Joint Community College Dist.*, 849 F.2d 1246, 1251 (9th Cir.1988) as authority for the proposition that a court's inherent power to impose sanctions in a case in which there is ultimately no subject matter jurisdiction applies with equal force when jurisdiction is lost because of sovereign immunity. The first case involved a matter in which the Republic of Philippines was a plaintiff. The Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq., which controls the courts' authority over foreign sovereigns, is inappli-

cable to federally recognized Indian tribes. In the second case, the trial court dismissed the plaintiff tribe's quiet title action as a sanction for not complying with the court's orders. The tribe's sovereign immunity was not at issue. In the third case, the Ninth Circuit upheld Rule 11 sanctions against the federal government, citing other Ninth Circuit cases which viewed the sanctions as authorized against the federal government by the Federal Rules of Civil Procedure. The court's inherent powers were not at issue. None of these cases addressed the conflict between the doctrines of inherent powers and sovereign immunity, as did the First Circuit in *Horn.*

¶ 9 Accordingly, the trial court's order granting judgment against Cherokee Nation for attorney fees and costs as discovery sanctions is **REVERSED**.

¶ 10 ADAMS and JOPLIN, JJ., concur.

---

1. In 1997, Congress passed the Hyde Amendment, Pub.L. No. 105–119, to amend 18 U.S.C. § 3006A, waiving sovereign immunity for attorney fees related to prosecutorial misconduct.