NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0418n.06

Case No. 13-2147

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
*Jun 10, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TC POWER LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| MCALPINE & ASSOCIATES, P.C., | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Movant-Appellant, | ) | MICHIGAN |
| | ) | |
| v. | ) | |
| | ) | OPINION |
| GUARDIAN INDUSTRIES CORPORATION | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

**Before: GILMAN, GIBBONS, and STRANCH, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** McAlpine & Associates, P.C., a Michigan law firm, represented plaintiff TC Power Ltd., a contractor based in the United Kingdom, in this breach-of-contract action. The codefendants were Guardian Industries Corporation, a Delaware corporation headquartered in Michigan, and Guardian Zoujaj International Float Glass Company, LLC, a limited-liability company based in the United Arab Emirates (collectively, Guardian). Guardian allegedly breached its contract with TC Power to retrofit an industrial gas turbine located in the United Arab Emirates. Neither the parties nor the district court questioned the latter's jurisdiction to hear the dispute.

TC Power and Guardian settled their breach-of-contract dispute in January 2011. Eighteen months later, McAlpine filed a motion to recover $30,894 in unpaid attorney fees incurred in its representation of TC Power. The district court, however, declined to exercise supplemental jurisdiction, which had the effect of denying McAlpine's motion for attorney fees.

On appeal, McAlpine challenges the district court's refusal to exercise supplemental jurisdiction over the attorney-fee dispute. We in turn requested the parties to brief the even more fundamental question of whether we have jurisdiction to resolve the present dispute at all. For the reasons set forth below, we have determined that subject-matter jurisdiction is lacking to decide McAlpine's request for attorney fees. We consequently **DISMISS** the present appeal without prejudice.

## I. BACKGROUND

### A.    Factual background

The parties' settlement agreement required Guardian to pay $90,000 to TC Power in two separate installments, the first in the amount of $10,000 and the second in the amount of $80,000. These payments were to be made to "McAlpine & Associates, P.C., Client Trust Account." After executing the settlement agreement in January 2011, Guardian instead made the payments directly to TC Power.

Eighteen months later, McAlpine sent a letter to Guardian, claiming that Guardian's direct payments to TC Power violated the conditions of the settlement. McAlpine's letter further noted that TC Power would likely be unable pay the balance due on McAlpine's legal fees due to TC Power's insolvency. The law firm therefore stated its intent to sue if Guardian failed to remit the amount due as attorney fees to McAlpine's Client Trust Account.

In September 2012, counsel for the parties discussed the attorney-fee issue, during which conversation Guardian's counsel asserted that the company would refuse to waive service of process of a state-court summons if the attorney-fee dispute were litigated in state court. This caused McAlpine to file a motion in the United States District Court for the Eastern District of Michigan to recover its attorney fees in connection with the breach-of-contract case that had been filed and settled in that court. McAlpine noted in its motion the stipulation in the settlement agreement that the court would retain jurisdiction to resolve any disputes arising thereunder. But when the district court declined to exercise supplemental jurisdiction, McAlpine timely appealed.

## B.     Procedural background

On August 24, 2009, TC Power filed its initial complaint against Guardian Industries Corporation in the federal district court. TC Power alleged that the district court had subject-matter jurisdiction under 28 U.S.C. § 1332, the federal diversity statute, because the amount in controversy exceeded $75,000 and the parties were completely diverse. On September 14, 2009, however, TC Power amended its complaint to add Guardian Zoujaj International Float Glass Company, LLC. TC Power continued to rely on the diversity-of-citizenship theory of subject-matter jurisdiction in its amended complaint.

## II. ANALYSIS

## A.     Subject-matter jurisdiction over foreign parties

"Nothing is to be more jealously guarded by a court than its jurisdiction." *Douglas v. E.G. Baldwin & Assoc., Inc.*, 150 F.3d 604, 606 (6th Cir. 1998) (internal quotation marks omitted), *abrogated on other grounds by Thomas v. Miller*, 489 F.3d 293 (6th Cir. 2007). Thus, potential defects in subject-matter jurisdiction may be raised at any time, even on appeal. Fed. R. Civ. P. 12(h)(3); *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may

raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."). We must thus decide whether the diversity statute, 28 U.S.C. § 1332, permits a federal court to decide disputes between a foreign plaintiff on one side of the litigation and foreign and domestic defendants on the other.

Under § 1332, federal courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and where the case is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2), (b). In *U.S. Motors v. General Motors Europe*, 551 F.3d 420 (6th Cir. 2008), this court considered whether it had jurisdiction to hear a state-law action brought by the citizens of three states and three foreign countries against a Swiss corporation. This court parsed the language of § 1332(a)(2) and declined to exercise jurisdiction, holding that "the presence of foreign parties on both sides of the dispute destroys the complete diversity required by § 1332(a)(2)." *Id.* at 424.

The dispositive facts in *U.S. Motors* are also present in this case. "[D]iversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants, [and] the presence of U.S. citizens on only one side of the dispute does not preserve jurisdiction." *Id.* at 423 (internal quotation marks omitted) (alteration added). TC Power, a foreign corporation, is therefore unable to rely on a theory of diversity jurisdiction to sue the Guardian codefendants, one of which is a foreign entity. The district court thus lacked jurisdiction over the underlying breach-of-contract dispute between TC Power and Guardian.

**B. Collateral issues**

Having so concluded, we now turn to McAlpine's attorney-fee request arising from the settlement agreement. In *Willy v. Coastal Corp.*, 503 U.S. 131 (1992), the Supreme Court

acknowledged that "there are some circumstances in which federal courts may impose attorney's fees or costs, even where the court eventually proves to be without subject-matter jurisdiction." *Id.* at 136. *Willy* addressed circumstances in which counsel for one of the parties attempted to evade sanctions by claiming that the district court lacked subject-matter jurisdiction. The Supreme Court rejected this argument, reasoning that the imposition of sanctions is "a collateral issue" addressing "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* at 138 (internal quotation marks omitted). In other words, a court otherwise lacking jurisdiction may continue to decide collateral issues that directly implicate the "maintenance of orderly procedure." *See id.* at 137.

But the present case is not one in which sanctions have been imposed, or where a statute entitles a party to attorney fees, or where McAlpine simply seeks payment from its own client based on a previously recorded lien or fee agreement. *See, e.g.*, *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 544 (6th Cir. 2013) (explaining, in a case addressing whether a district court is required to exercise supplemental jurisdiction over a state-law attorney-fee dispute, that "no complaint or claim need be filed *against the client*" to ensure that a lawyer gets paid in a case in which the lawyer had placed a charging lien on the settlement proceeds (emphasis added)); *see also Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992) (holding that a district court retained jurisdiction to award costs and attorney fees under 28 U.S.C. § 1447, the federal removal statute, even though the court's remand order did not specifically mention attorney fees). In contrast, McAlpine claims, in its capacity as a purported third-party beneficiary, an alleged attorney's lien arising from the settlement agreement.

This distinction matters because when a lawyer "seeks . . . payment for services performed, payment of a contingency fee or payment from a common fund, *all in a pending case*," the courts should honor the usual procedures for ensuring that the lawyer gets paid. *See Exact Software*, 718 F.3d at 544 (emphasis added). In this case, however, McAlpine's claim against Guardian was not asserted until long after the underlying breach-of-contract dispute had been resolved. McAlpine's claim against Guardian is therefore far different than an attempt to simply be paid by one's own client in a pending case; it is a wholly separate claim against a third party in a case long since settled.

Guardian, in fact, vigorously disputes McAlpine's right to payment, the existence of an attorney's lien, the scope of the parties' settlement agreement, Guardian's alleged nonperformance, and the extent to which the law firm, as an alleged third-party beneficiary, has standing to sue. The potentially complicated issues of Michigan law implicated by the settlement agreement go well beyond "[t]he interest in having rules of procedure obeyed," *see Willy*, 503 U.S. at 139, and would require us to decide the scope of a document that the district court was without authority to consider in the first instance.

We note that the judgment of the district court, which arose from the parties' settlement agreement, is res judicata because a finding that a court lacks subject-matter jurisdiction "does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." *Id.* at 137. But we cannot continue, in the absence of jurisdiction, to address a new claim under the settlement agreement. A Michigan state court is thus the more appropriate arbiter of the present dispute.

McAlpine argues, however, that requiring it to proceed in Michigan state court is tantamount to affording it no relief because Guardian will refuse to waive service of process of a

state-court summons. Although McAlpine may well be right, the settlement agreement's stipulation to jurisdiction in the United States District Court for the Eastern District of Michigan is of no effect because "[t]he jurisdiction of the federal courts is set by the Constitution and Congress, and may not be created by the consent (or forfeiture) of the parties." *Exact Software*, 718 F.3d at 539. Perhaps more promptness in pursuing the attorney-fees issue would have avoided the present dispute, but federal courts cannot permit parties to continue litigating such matters when jurisdiction is lacking.

## III.  CONCLUSION

For all of the reasons set forth above, we **DISMISS** the instant appeal for lack of subject-matter jurisdiction.