*Joe Johnson v. Spireon, Inc.*, No. 317, Sept. Term 2024. Opinion by Tang, J.; concurrence by Friedman, J.

**COURTS—CONCURRENT AND CONFLICTING JURISDICTION—COURTS OF SAME STATE—TRANSFER OF CAUSES—EFFECT OF TRANSFER AND PROCEEDINGS HAD THEREAFTER—IMPROPER TRANSFER**

Courts & Judicial Proceedings Article § 4-402(e)(1) provides that "In a civil action in which the amount in controversy does not exceed $25,000, exclusive of attorney's fees if attorney's fees are recoverable by law or contract, a party may not demand a jury trial pursuant to the Maryland Rules."

The circuit court did not acquire subject matter jurisdiction over the action when the plaintiff improperly demanded a jury in the District Court, where the amount in controversy was $25,000. The amended complaint subsequently filed by the plaintiff in the circuit court, after the improper jury demand, was a nullity. As a result, the judgment dismissing the claims in the amended complaint was also null and void.

**COSTS, FEES, AND SANCTIONS—SANCTIONS—IN GENERAL—AUTHORITY TO IMPOSE—IN GENERAL**

Maryland Rule 1-341 provides that, in any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court may require the offending party to pay the adverse party's reasonable expenses, including attorneys' fees, incurred in opposing it.

Because a Rule 1-341 proceeding is an independent proceeding supplemental to the underlying action and collateral to the merits, a trial court's lack of subject matter jurisdiction over the action does not deprive the court of its remedial authority to consider a motion under Rule 1-341.

**CORPORATIONS AND BUSINESS ORGANIZATIONS—DEPENDING ON COMPLIANCE WITH STATUTORY REQUIREMENTS**

Corporations & Associations Article ("CA") § 7-202(a) requires that, "before doing any interstate or foreign business in this State, a foreign corporation shall register with the [State Department of Assessments and Taxation]." CA § 7-301 provides that, "[i]f a foreign corporation is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of [§ 7-202], *neither the corporation nor any person claiming under it may* <u>*maintain a suit*</u> in any court of this State[.]" (emphases added).

The statutory bar to an unregistered foreign corporation's maintaining a "suit" does not preclude such corporation from seeking relief under Maryland Rule 1-341.

Circuit Court for Prince George's County
Case No. C-16-CV-23-004380

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 317

September Term, 2024

_____

JOE JOHNSON

v.

SPIREON, INC.

_____

Friedman,
Tang,
Wright, Alexander, Jr.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Tang, J.
Concurring Opinion by Friedman, J.

_____

Filed: June 27, 2025

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

Joe Johnson ("Johnson"), a pro se litigant with paralegal training, filed a lawsuit against Spireon, Inc. in the District Court of Maryland for Prince George's County. He demanded a jury trial, and the District Court transferred the case to the Circuit Court for Prince George's County. Spireon, Inc. moved to dismiss the claims, which led to a series of filings by Johnson and responses from Spireon, Inc. Ultimately, the court dismissed the claims with prejudice on grounds of res judicata.

Under Maryland Rule 1-341, Spireon, Inc. sought an award of attorneys' fees incurred in defending itself against the action. After a hearing, the court granted the motion, finding that Johnson maintained the action in bad faith and without substantial justification. The court ordered Johnson to pay Spireon, Inc. $84,321 in attorneys' fees.

On appeal, Johnson presents various questions, which we have consolidated and rephrased as follows:[1]

---

[1] The questions are presented in Johnson's principal brief as follows:

1. Whether the hearing judge committed clear error when she determined that Appellant filed his case without sufficient justification and in bad faith because Appellant filed a lawsuit that was later determined to be barred by res judicata?

2. Whether the hearing judge abused her discretion in awarding attorneys' fees in the amount of $84,321.00, given that Appellee's fees—including $49,650.00 for a partner charging $750/hour for 66.2 hours of work and $30,320.00 for a second-year associate charging $400/hour for 75.8 hours of work—grossly exceeded the customary fees for similar legal services in the legal community of Prince George's County?

3. Whether the hearing judge erred or abused her discretion in permitting Appellee, a foreign corporation doing business in Maryland that was not properly registered with SDAT pursuant to CA [Corporations and Associations Article] § 7-202, to pursue an affirmative claim for attorneys'

1.  Did the circuit court lack subject matter jurisdiction when it dismissed Johnson's claims?

2.  Did the circuit court lack authority to decide Spireon, Inc.'s motion for attorneys' fees under Maryland Rule 1-341?

3.  On the merits, did the circuit court err in granting Spireon, Inc.'s motion for attorneys' fees under Maryland Rule 1-341?

As we will explain, we answer "yes" to the first question. We answer "no" to the remaining questions and affirm the judgment of the circuit court that granted Spireon, Inc.'s motion for attorneys' fees under Rule 1-341.

---

fees under Rule 1-341, given that CA § 7-301 bars such foreign corporations from maintaining a suit in any court of this State?

4. Whether the Circuit Court abused its discretion in denying Appellant's Motion to Vacate Judgment?

Johnson later filed a supplement to his brief, contending that the circuit court lacked subject matter jurisdiction to dismiss his claims and grant the Rule 1-341 motion.

In the argument section of his principal brief, Johnson combines the third and fourth issues presented. His discussion of the fourth issue consists of one sentence. In it, he states that, after the court granted the Rule 1-341 motion, he re-raised an earlier argument about CA § 7-301 in his motion to vacate the judgment, "which the lower court denied without explanation." Because the issue raised in the fourth question presented was not adequately briefed, we shall not address it. *See Klauenberg v. State*, 355 Md. 528, 552 (1999) ("[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal."); *Silver v. Greater Balt. Med. Ctr., Inc.*, 248 Md. App. 666, 688 n.5 (2020) (we previously stated that "[a] single sentence is insufficient to satisfy [Rule 8-504(a)]'s requirement" that a brief contains argument in support of the party's position on each issue).

2

# BACKGROUND

## A.

## "Spireon, Inc." and "Spireon GPS"

Spireon, Inc. and Spireon GPS, L.P. were frequently referenced throughout the proceedings below. The differences in their business purposes were not entirely clear from the record; however, both entities were generally involved in providing consumers with GPS vehicle-tracking software and devices to locate or recover stolen vehicles.

Both were Delaware entities and, at various times, registered with the Maryland State Department of Assessments and Taxation (the "SDAT") to conduct business in Maryland. In 2016, however, Spireon, Inc. forfeited its status and lost good standing in Maryland.

When Spireon GPS was formed in 2019, Spireon, Inc. served as its general partner. The two entities ultimately merged in April 2023. Spireon, Inc. became the successor in interest to Spireon GPS due to this merger.

## B.

## First Lawsuit (Against Spireon GPS)

The underlying dispute arose in 2019 when Johnson purchased a Lo/Jack vehicle recovery system for his car. Johnson paid $995 for the device, which was accompanied by a user agreement and limited warranty.

On March 25, 2022, Johnson filed a pro se complaint against Spireon GPS d/b/a Lo/Jack in the District Court of Maryland for Prince George's County, seeking damages

for $2,500 (Case No. 05-02-0004853-2022). Johnson alleged that Spireon GPS was selling Lo/Jack devices and acting as an agent for the manufacturer.

He alleged that Spireon GPS had failed to schedule any post-installation inspections of the Lo/Jack device, which violated the user and warranty agreement and resulted in damages. Johnson alleged breach of contract and violation of the Maryland Consumer Protection Act. Johnson served Spireon GPS's resident agent on June 21, 2022, but the entity did not file a response to the complaint.

On April 6, 2022, Johnson filed a separate complaint with the Better Business Bureau (the "BBB") against Spireon, Inc. In it, Johnson raised the same issue concerning the device that formed the basis of his District Court complaint against Spireon GPS. In his BBB complaint, he recognized that Spireon, Inc. (as opposed to Spireon GPS) was the entity that "purchased the Lo/Jack corporation through acquisition, and in doing so, it legally acquired all of Lo/Jack's assets including user agreements and contracts and became responsible for all aspects of its predecessor."

1. **Attempted Settlement**

Johnson agreed to settle the lawsuit against Spireon GPS on voluntary terms, which included the installation of a new device and a complimentary, three-year subscription for GPS tracking services. The terms of settlement developed as follows.

On or about April 22, 2022, Spireon, Inc. provided Johnson with a new, upgraded Lo/Jack model. On July 14, 2022, Johnson filed a notice of dismissal, indicating a "dismissal without prejudice as to Defendant Spireon, GPS . . . pursuant to Maryland Rule

4

3-506(b)."[2] Consequently, the District Court issued a dismissal notice stating that the District Court was "advised that the parties have dismissed this case upon stipulated terms."

After the lawsuit was dismissed, Johnson expressed concerns to Spireon, Inc. and its corporate counsel, Anna Corcoran, Esq., about the new device not functioning properly. On November 8, 2022, he emailed a customer support representative at Spireon, Inc., copying Ms. Corcoran, with the subject line: "Joe Johnson v. Spireon [GPS], Case No. 050200048532022." In the email, he demanded a full refund for the Lo/Jack device involved in the lawsuit, stating: "Ms. Corcoran, this issue [regarding the GPS service] still hasn't been resolved and if it is not resolved within the next 24-hours, I intend to reinstate: Johnson v. Spireon, et al,[3] Civil No. 05020048532022." Later that day, Ms. Corcoran responded that she had escalated the matter and was confident they could resolve it without litigation.

Although Spireon, Inc. inspected the device and found no issues, it later removed the device and installed a second new device in Johnson's vehicle that same month. It also provided Johnson with a complimentary three-year subscription for GPS tracking services. However, Johnson remained unsatisfied.

---

[2] Maryland Rule 3-506(b) provides that "[i]f an action is settled upon written stipulated terms and dismissed, the action may be reopened at any time upon request of any party to the settlement to enforce the stipulated terms through the entry of judgment or other appropriate relief."

[3] "Et al." is an abbreviation of *et alii* or *et alia*, which is Latin for "[a]nd other persons." *Et al.*, Black's Law Dictionary (12th ed. 2024). However, the only defendant Johnson named in the lawsuit was Spireon GPS.

### 2. Johnson's Motion to Vacate the Dismissal of the Lawsuit

On December 1, 2022, Johnson filed a Motion to Vacate Dismissal. In his motion, he stated that the court had previously dismissed the case based on "stipulated terms" and that "[d]espite [having] a reasonable opportunity, [Spireon GPS] has failed to take the agreed upon steps necessary to resolve the dispute that precipitated the dismissal in this case." Therefore, he sought to "vacate the dismissal to have the dispute determined by the [c]ourt on the merits."

In the certificate of service attached to the motion, Johnson certified that he sent the motion to "counsel for Defendant Spireon GPS . . . through the MDEC filing system." The only counsel identified in the MDEC notification was Ms. Corcoran, whose appearance had not been entered. The certificate of service did not indicate that Johnson served Spireon GPS's resident agent. As a result, Spireon GPS did not receive the motion. On December 10, 2022, the District Court granted the Motion to Vacate Dismissal.

On December 19, Ms. Corcoran emailed Johnson, indicating that she received the Motion to Vacate. She attempted to resolve Johnson's dissatisfaction with the subscription in her email.

On February 7, 2023, a representative from Spireon, Inc. emailed Johnson to inform him that Ms. Corcoran had left "the company." The representative attempted to resolve the subscription issue that Ms. Corcoran had been addressing with Johnson.

### 3. Johnson's Motion for Judgment on Affidavit

On February 13, 2023, Johnson filed a Motion for Judgment on Affidavit, reiterating that "[d]espite [having] a reasonable opportunity, [Spireon GPS] has failed to take the

agreed upon steps necessary to resolve the dispute that precipitated the dismissal in this case." He requested that the District Court enter a judgment against Spireon GPS for the amount requested in the complaint. As he did in his earlier motion, he certified that he served the motion on "counsel for . . . Spireon GPS . . . through the MDEC filing system" (Ms. Corcoran).[4] However, he did not indicate that he served Spireon GPS's resident agent.

On April 17, the District Court granted the Motion for Judgment on Affidavit, entering judgment against Spireon GPS for $2,500. The District Court sent Spireon GPS's resident agent notice of the order.

### 4. Spireon, Inc.'s Motion to Vacate Judgment

On May 15, 2023, Brian Maloney, Esq., filed his notice of appearance on behalf of Spireon, Inc., which had merged with Spireon GPS and became its successor in interest. On May 17, Spireon, Inc. filed a motion to vacate the order that granted judgment in Johnson's favor because Johnson never served Spireon GPS with his motions.

On May 18, Johnson filed an opposition to Spireon, Inc.'s motion. He argued, among other things, that Spireon, Inc. was not a party to the case and therefore lacked standing to challenge the judgment. Moreover, he stated, "according to [the SDAT], when this case was filed, Spireon, Inc. was a forfeited entity, Exhibit I, meaning it had no right to use its name." Attached to his opposition as Exhibit I was an SDAT printout showing that Spireon, Inc. was "not in good standing" and that its status was "forfeited."

---

[4]As mentioned, on February 7, 2023, a representative emailed Johnson, informing him that Ms. Corcoran was no longer with "the company." It is unclear why Johnson would have served Ms. Corcoran with the Motion for Judgment on Affidavit days later.

Johnson stated that he had "voluntarily dismissed [the lawsuit] without prejudice . . . while he and [Spireon GPS] attempted to resolve the dispute through [Spireon GPS's] attorney, Anna Corcoran." In response to the assertion that he failed to serve Spireon GPS with the motions, he stated that he served both motions on Spireon GPS "through counsel, Anna Corcoran," via MDEC.

The District Court ordered Spireon, Inc.'s motion to be set for a hearing.

**5. Spireon, Inc.'s Satisfaction of Judgment Against Spireon GPS**

Spireon, Inc. decided not to litigate the claims and opted to pay the judgment instead. On June 7, 2023, Mr. Maloney informed Johnson that Spireon, Inc. was willing to pay $2,500 to satisfy the judgment against Spireon GPS. Mr. Maloney wrote:

> As you know, this firm represents Spireon, Inc. in connection with the above-referenced lawsuit [*Johnson v. Spireon GPS*]. Without admitting liability and under a full reservation of rights, Spireon, Inc. will pay the judgment amount of two thousand five hundred dollars ($2,500.00) in full satisfaction of the judgment in the above-referenced matter. We have enclosed a W-9 form, which you must complete to obtain payment of the judgment.

By letter dated June 23, Spireon, Inc. provided Johnson with a check for $2,500, indicating once again that the payment satisfied the judgment against Spireon GPS. The check itself was made out from "Spireon, Inc.," and the memo line stated, "Check in payment of Judgment – Joe Johnson."

On July 3, Johnson filed a Notice of Satisfaction, which the District Court entered on July 5.

On August 22, Spireon, Inc. deactivated the subscription offered as part of the unsuccessful settlement effort. Shortly thereafter, Johnson attempted to purchase a three-

8

year subscription for $270 to maintain GPS tracking services; however, Spireon, Inc. rejected his attempted purchase and refunded the $270 charge.

## C.

### Second Lawsuit (Against Spireon, Inc.)

On September 8, 2023, Johnson filed a second pro se complaint in the District Court, this time against Spireon, Inc. (Case No. D-05-CV-23-29022). Without mentioning the first lawsuit or the attempted settlement, Johnson claimed that, on or about November 25, 2022, Spireon, Inc. had offered him a complimentary three-year subscription to provide GPS tracking services for his vehicle. Johnson alleged that, after he accepted the offer and Spireon, Inc. installed the device in his car, it deactivated the device and terminated the subscription on or about August 22, 2023, without justification.

He alleged breach of contract, fraud, violation of the Maryland Consumer Protection Act, and deceptive trade practices. He also included a claim for unjust enrichment because he had to purchase a new subscription from Spireon, Inc. for $270 that he claimed it later refused to activate.

In his complaint, Johnson requested $25,000 in damages. He demanded a jury trial the same day he filed the District Court complaint, and the case was transmitted to the circuit court.

This second lawsuit led to various filings that became the subject of Spireon, Inc.'s Rule 1-341 motion at issue in this appeal. We summarize the relevant filings below.

## 1. Spireon, Inc.'s Motion to Dismiss Complaint

On November 6, 2023, Spireon, Inc. moved to dismiss the complaint. It argued that all but the unjust enrichment claims were barred by res judicata because they arose out of the attempted settlement of the first lawsuit, which Johnson later rejected by reopening the first lawsuit and obtaining a judgment of $2,500.

Spireon, Inc. moved to dismiss the unjust enrichment claim on the merits. It explained that Johnson failed to disclose that Spireon, Inc. did not accept his purchase of the subscription service and refunded his $270 payment. Thus, it argued that it did not retain any benefit as he alleged.

## 2. Johnson's Amended Complaint

On November 30, 2023, Johnson filed an amended complaint in response to the motion to dismiss. In the amended complaint, he removed his claim for unjust enrichment and reframed the remaining claims so that each was based on Spireon, Inc.'s alleged status as a forfeited entity in Maryland. Specifically, Johnson alleged that Spireon, Inc. "was not registered nor licensed to conduct business in the State of Maryland, and has been operating as a forfeited entity in the State."

Again, Johnson did not mention the first lawsuit or the attempted settlement that included a three-year subscription. Instead, he described the subscription as an effort to settle the BBB complaint, rather than the first lawsuit. He claimed Spireon, Inc. contacted him in November 2022 regarding his BBB complaint and offered him a "courtesy" subscription despite being "prohibited from doing any business in the State." He alleged

that Spireon, Inc. deactivated the device and terminated the subscription in August 2023 without justification.

His amended complaint asserted eight counts: two counts of violation of the Maryland Consumer Protection Act; and one count each of "property damages," fraudulent inducement, recission, unfair and deceptive trade practices, declaratory judgment and injunctive relief based on doing business in the State as an unregistered foreign corporation, and intentional infliction of emotional distress.

### 3. Spireon, Inc.'s Motion to Dismiss Amended Complaint

On December 15, 2023, Spireon, Inc. moved to dismiss Johnson's amended complaint, primarily on res judicata grounds. It argued that Spireon GPS and Spireon, Inc. were in privity and, therefore, considered the "same party" for the purposes of res judicata. It argued that the judgment in the first lawsuit was final and on the merits.

In addition, Spireon, Inc. argued that the two claims in both lawsuits arose out of the same transaction or series of transactions involving the Lo/Jack device. It explained that the claims in the second lawsuit arose directly from its attempt to settle the first lawsuit, which Johnson had rejected for a $2,500 judgment under Rule 3-506(b). It maintained that what Johnson sought in the second lawsuit was to gain the benefits of both the $2,500 judgment *and* the terms of the settlement that the judgment had replaced. Finally, Spireon, Inc. requested attorneys' fees under Rule 1-341.

On January 2, 2024, Johnson opposed the motion to dismiss. He argued that the claims in the second lawsuit were not barred by res judicata, partly because the events that gave rise to the second lawsuit occurred after he filed the first lawsuit.

11

Johnson opposed Spireon, Inc.'s Rule 1-341 request for fees. He argued that, because Spireon, Inc. had forfeited its status as a registered corporation in Maryland, under § 7-301 of the Corporations and Associations Article of the Maryland Code ("CA"), it could not pursue relief under Rule 1-341.

On March 8, 2024, Spireon, Inc. filed a reply in support of its motion to dismiss to address other arguments made by Johnson in his opposition.

The court scheduled a hearing for March 12, 2024, which we will detail later. We will now summarize the filings made before the hearing, while the motion to dismiss was pending.

### 4. Johnson's Discovery Requests and Related Filings

On November 30, 2023, Johnson served discovery requests on Spireon, Inc., along with his amended complaint. The requests consisted of thirty interrogatories, not counting subparts, which exceeded the permissible number of interrogatories allowed under Rule 2-421;[5] twenty-two requests for production of documents; and fifty requests for admission.

On December 15, Spireon, Inc. moved for a protective order to stay discovery until the court ruled on its motion to dismiss. Johnson opposed the motion on January 2, 2024.

On January 9, 2024, Johnson filed a motion for immediate sanctions for Spireon, Inc.'s failure to respond to his discovery requests. He asked that his requests for admission

---

[5] Maryland Rule 2-421(a) limits interrogatories to a "cumulative total of not more than 30 interrogatories to be answered by the same party." "Interrogatories, however grouped, combined, or arranged and even though subsidiary or incidental to or dependent upon other interrogatories, shall be counted separately," unless the interrogatory is in the form set forth in the Appendix to the Rules. *Id.*

be deemed admitted and that a determination as to liability be entered as to all claims in the amended complaint. On January 18, Spireon, Inc. opposed the motion for immediate sanctions. On January 22, Johnson filed a reply in support of his motion for immediate sanctions.

On February 16, the court granted Spireon, Inc.'s motion for a protective order to stay discovery. It denied Johnson's motion for immediate sanctions.

### 5. Johnson's Notice of Joinder and/or Substitution of Parties and Related Filings

On December 29, 2023, while the motion to dismiss was pending, Johnson filed a Notice of Joinder and/or Substitution of Parties to add three individuals as defendants. He identified these individuals as the "Chief Executive Officer," "Chief Executive Officer, Secretary," and "Chief Financial Officer" at Spireon, Inc. Although the amended complaint did not reference any of these individuals, Johnson stated in his notice that their inclusion was necessary because complete relief could not be achieved solely through Spireon, Inc. Alternatively, he claimed that substitution was appropriate since Spireon, Inc. had forfeited its corporate charter in Maryland.

On January 25, 2024, Spireon, Inc. filed a motion to quash the notice and any process served on the three individuals and requested fees under Rule 1-341. Spireon, Inc. argued that Johnson had no legal basis for adding these individuals to the case, as there were no allegations regarding them in either the original or amended complaint. Additionally, Johnson had attempted to add parties beyond the deadline established in the scheduling order, which was ninety days before the trial date set for March 21, 2024.

13

Additionally, Spireon, Inc. stated that its charter had never been forfeited, so the substitution rule was not applicable.

On January 26, Johnson filed a motion to strike Spireon, Inc.'s motion to quash as untimely. On February 12, Spireon, Inc. opposed Johnson's motion to strike.[6]

Also on January 26, Spireon, Inc. moved for a protective order requesting that the individuals' personal addresses be redacted from the court record. On January 29, Johnson opposed the request. On February 26, the court granted Spireon, Inc.'s motion for a protective order.

### 6. Johnson's Motion to Refer Case to Attorney General

On January 29, 2024, Johnson filed a "Motion to Refer This Action to the Maryland Attorney General for Enforcement Action" because Spireon, Inc. had been doing business as an unregistered business in Maryland. Johnson claimed that "[b]ecause this action involves allegations of violation of Maryland criminal laws over which the Maryland Attorney General has jurisdiction," the court should refer the action to the "Attorney General for investigation and any appropriate Enforcement Action that may be necessary to prevent Defendant Spireon from further violating the laws of this State."

On February 12, Spireon, Inc. opposed the motion. It argued that the court did not have the authority to refer the action to the Attorney General, that the court lacked judicially manageable standards for deciding such a motion, and that Johnson did not have a

---

[6] The court did not rule on Spireon, Inc.'s motion to quash and Johnson's motion to strike it until after it dismissed the amended complaint. By that time, these motions were moot.

14

cognizable interest in the Attorney General's potential prosecution of Spireon, Inc. It also requested fees under Rule 1-341 for having to respond.

On February 13, the court denied Johnson's motion and ordered Johnson to pay Spireon, Inc.'s "costs and expenses, including reasonable attorneys' fees, incurred in responding" to the motion. It also advised Johnson to "seek counsel with regard to proper filings." The court continued: "If appropriate, attorney's fees may be requested for similar future filings. A hearing will be held for any such filings regarding attorney's fees."

### 7. Johnson's Motion for Partial Summary Judgment

On February 2, 2024, Johnson filed a motion for partial summary judgment, contending that there was no dispute that Spireon, Inc. had violated the Maryland Consumer Protection Act and damaged the wiring in his vehicle.

On February 15, Spireon, Inc. moved for a protective order to stay the period for filing an opposition to the motion because its motion to dismiss was still pending. The next day, the court granted Spireon, Inc.'s motion for a protective order.

On February 26, the court denied Johnson's motion for partial summary judgment.

### D.

### Dismissal of the Second Lawsuit

On March 12, 2024, the court held a hearing on Spireon, Inc.'s motion to dismiss. By that time, an attorney had entered an appearance to represent Johnson for purposes of the motions hearing. Although the terms of the stipulated dismissal in the first lawsuit were not memorialized in writing, Johnson's counsel acknowledged at the hearing that the

15

settlement agreement required Spireon, Inc. to install a new device in Johnson's car and maintain a three-year subscription for GPS tracking services.

However, Johnson's counsel explained that the allegations in the second lawsuit arose because Spireon, Inc. installed a second device in November 2022, agreed to operate it for three years under the subscription, and then discontinued service on August 22, 2023. Because all allegations in the second lawsuit arose on August 22, 2023, after the first lawsuit was resolved, counsel argued that res judicata did not apply.

The court observed that Spireon, Inc. stopped the subscription after Johnson vacated the dismissal on stipulated terms. It noted that Johnson was dissatisfied with the settlement agreement and subsequently chose to obtain a judgment in the full amount of $2,500 as allowed under Maryland Rule 3-506(b). The court pointed out that the allegations in the second lawsuit did not mention the attempted settlement aimed at resolving the first lawsuit: "It's as if [Johnson] doesn't want us to know what happened in the other case." Additionally, the court remarked that Johnson was "trying to bend the facts" in the amended complaint, particularly since the procedural history of the first lawsuit demonstrated that the offer of the subscription related to the settlement agreement Johnson later vacated.

After the hearing, the court dismissed the second lawsuit with prejudice because the claims in the amended complaint were barred by res judicata. The court continued the hearing to March 29 to address Spireon, Inc.'s request for attorneys' fees under Rule 1-341.

On March 19, the court entered the order dismissing the second lawsuit with prejudice on res judicata grounds. Thereafter, Johnson filed a pro se motion for reconsideration. Spireon, Inc. opposed the motion, stating, among other things, that

16

Johnson had made the filing (and others) without the signature of his attorney. *See* Md. Rule 1-311(a) (requiring that "every pleading and paper of a party represented by an attorney shall be signed by at least one attorney who has been admitted to practice law in this State"). In addition, Spireon, Inc. informed the court that Johnson, in his pro se capacity, had sent a letter to Jennifer Mahar, Esq., Spireon, Inc.'s lead counsel, the day before. In it, he claimed that Ms. Mahar "repeatedly misrepresented" facts to the court, he asserted violations of the Maryland Rules of Professional Conduct, and he demanded that she withdraw the Rule 1-341 motion by March 27, 2024, or else face a formal ethics complaint.[7]

On March 28, the court denied Johnson's motion for reconsideration of its dismissal of the second lawsuit.

## E.

## Spireon, Inc.'s Rule 1-341 Motion

On March 15, 2024, under Rule 1-341, Spireon, Inc. filed a Motion for Award of Attorneys' Fees. Spireon, Inc. argued that Johnson had pursued the second lawsuit in bad faith and without substantial justification. It claimed he was seeking an impermissible double recovery for a dispute for which he had already been fully compensated. It cited other conduct, such as making numerous and harassing filings, exceeding the scope of

---

[7] After consulting with his lawyer, Johnson withdrew the letter. He indicated through his counsel that he had no intention of pursuing any of the steps outlined in it. However, in his pro se opposition to the Rule 1-341 motion *infra*, Johnson continued to maintain that "counsel for Spireon, Inc." omitted facts with "the specific intent to mislead" the court and "obtain a favorable ruling on [Spireon, Inc.'s] motion to dismiss."

permissible discovery, attempting to add unrelated defendants, and requesting that the court refer the case to the Attorney General. Spireon, Inc. requested fees incurred for reviewing, evaluating, researching, and drafting the filings summarized above in Sections C.1 through 7. Johnson filed a pro se opposition to the motion, followed by one prepared by his counsel.

On March 29, the court conducted the evidentiary portion of the hearing on Spireon, Inc.'s motion. Ms. Mahar addressed the court's inquiries regarding the hours spent on various tasks. She acknowledged the court's concern about the substantial amount of attorneys' fees requested. She explained that the amount reflected all the work necessary to respond to filings made by Johnson that were in bad faith or lacked substantial justification.

Ms. Mahar stated that responding to Johnson's arguments took longer than expected because he was pro se for most of the litigation and, accordingly, his arguments were often difficult to unwind. She said her team had to respond by "unravel[ing]" and researching contentions to show that "Mr. Johnson's twisting of the law wasn't supported." Furthermore, she explained that Johnson would promptly respond with another filing whenever Spireon, Inc. filed a response.

Johnson's counsel clarified what the court could consider when evaluating the motion. He acknowledged that Johnson was not attempting to relitigate the court's earlier dismissal of the amended complaint on res judicata grounds. However, he emphasized that the fact that the court concluded the claims were barred by res judicata did not automatically support a finding that Johnson pursued the second lawsuit in bad faith. The court acknowledged this distinction. Nonetheless, the court indicated, and Johnson's

counsel did not dispute, that it could consider the District Court record from the first lawsuit when assessing the motion. The court announced that it was taking judicial notice of the District Court record and had reviewed its filings.

### 1. Johnson's Testimony at the Rule 1-341 Hearing

Johnson testified that when he filed his initial lawsuit against Spireon GPS and the BBB complaint against Spireon, Inc., he believed the two entities were separate. He claimed he did not know which of the two entities was responsible for the warranty. Johnson further testified that it was not until early 2024, after the conclusion of the first lawsuit, that he discovered Spireon, Inc. and Spireon GPS had merged.

Johnson claimed that he treated the resolution of the BBB complaint with Spireon, Inc. separately from the first lawsuit against Spireon GPS. He explained that he dismissed the first lawsuit against Spireon GPS only because he was acting in "good faith" while attempting to resolve the BBB complaint with Spireon, Inc. However, the court noted that Johnson acknowledged in his Motion to Vacate Dismissal, filed in the first lawsuit against Spireon GPS, that the lawsuit had been dismissed under stipulated terms. The court also commented on Johnson's sophistication in referencing the relevant rules and terminology, which were beyond the knowledge of a typical pro se litigant. In response, Johnson stated that he never had a written agreement to settle and claimed that, despite what the District Court record indicated, there were no stipulated terms associated with the dismissal of the first lawsuit.

Johnson explained why he filed the Motion to Vacate Dismissal in the first lawsuit. He testified that when Spireon, Inc. failed to resolve the issue with the subscription to

Johnson's satisfaction, he felt it was only appropriate for him to "go back to Spireon GPS, who [he] had had the original device with and continue [his] claim against them."

The court commented on Johnson's failure to properly serve the Motion to Vacate Dismissal on Spireon GPS in the first lawsuit, noting that his certificate of service did not indicate that he had served the motion to its resident agent. Johnson testified that he sent the motion to Spireon GPS's resident agent. Regarding Spireon, Inc., he stated that he had no obligation to send the motion to Spireon, Inc., as it was a non-party. However, he explained that he sent a "courtesy copy" via MDEC to Spireon, Inc.'s counsel, Ms. Corcoran, with whom he had been communicating to resolve the BBB complaint, though she was "not involved" in the lawsuit against Spireon GPS.[8]

Regarding the $2,500 check he received as satisfaction for the judgment against Spireon GPS, Johnson testified that he believed this payment resolved his dispute regarding the original device that was the subject of the first lawsuit, which was unrelated to the BBB complaint. His second lawsuit, he explained, arose from Spireon, Inc.'s termination of the subscription included as part of the attempted resolution of the BBB complaint, as well as

_____

[8] Johnson's statements in the filings in the first lawsuit contradict his testimony regarding Ms. Corcoran's involvement and the service of the Motion to Vacate Dismissal on Spireon GPS. As previously mentioned, when Spireon, Inc. sought to vacate the judgment against Spireon GPS, Johnson filed an opposition on May 18, 2023. In it, he referred to Ms. Corcoran as counsel for Spireon GPS and claimed that he had been trying to resolve the dispute from the first lawsuit with her. In addition, he stated in the opposition that he served Spireon GPS via MDEC through Ms. Corcoran (rather than through its resident agent, as he had testified).

an additional subscription he purchased for $270; both were unrelated to the original device involved in the first lawsuit.

Johnson also explained the reasons for amending his complaint in the second lawsuit. He stated that after he paid for a new subscription, Spireon, Inc. refused to reactivate the service, rendering the device non-functional. This situation formed the basis of his original complaint in the second lawsuit. Johnson noted that Spireon, Inc. eventually refunded his $270 payment, leading him to believe that his original complaint had become moot. However, in November 2023, he discovered Spireon, Inc. was not in good standing and became a forfeited entity. Based on this discovery, Johnson amended the complaint to include claims related to Spireon, Inc.'s status as a forfeited entity.[9]

Johnson then explained why he filed the Notice of Joinder/Substitution of Parties. He testified that he had moved to join three individual officers of Spireon, Inc. as defendants after receiving confirmation that Spireon, Inc. "wasn't doing business in Maryland." He explained that "based on [his] research," he believed he had to join the company's officers as defendants "to save the lawsuit from being dismissed."[10]

---

[9] Again, Johnson's representations in the filings made in the first lawsuit belie his testimony. In the opposition filed on May 18, 2023, in the first lawsuit, Johnson represented that Spireon, Inc. was not in good standing and its status was forfeited. Thus, he was aware of Spireon, Inc.'s status at least four months before he filed his original complaint in the second lawsuit and about six months before he filed the amended complaint.

[10] Spireon, Inc. never moved to dismiss the second lawsuit on the basis that it did not have the capacity to be sued.

21

Finally, Johnson explained why he moved to refer the case to the Attorney General. He testified that it was based on the allegation in his amended complaint about Spireon, Inc.'s forfeited status in Maryland.

On cross-examination, Spireon, Inc. highlighted that, contrary to his testimony that Johnson considered the resolution of the BBB complaint against Spireon, Inc. to be distinct from the lawsuit against Spireon GPS, both claims arose from the same alleged issues with the same device.

Spireon, Inc. also pointed out during cross-examination that, despite the claim that he believed Spireon, Inc. and Spireon GPS were separate entities at the time of the first lawsuit, Johnson had acknowledged in the BBB complaint—filed around the same time as the first lawsuit—that Spireon, Inc. (not Spireon GPS) "purchased the Lo/Jack corporation through acquisition, and in doing so, it legally acquired all of Lo/Jack's assets including user agreements and contracts and became responsible for all aspects of its predecessor."

## 2. Court's Ruling

On April 15, 2024, the parties reconvened for closing arguments. Spireon, Inc. argued that Johnson had amended his complaint to avoid the effects of res judicata after Spireon, Inc.'s initial motion to dismiss raised this challenge. Spireon, Inc. highlighted Johnson's relative sophistication for a pro se litigant, noting that he had received paralegal training. It pointed out that he consistently cited specific procedural rules throughout the litigation, including his reference to Rule 3-506 when dismissing his first lawsuit. Furthermore, based on his complaint to the BBB, he appeared to understand the relationship between Spireon, Inc. and Spireon GPS. Spireon, Inc. contended that these

facts contradicted Johnson's claim that he believed Spireon, Inc.'s offer of a replacement device and accompanying subscription was an attempt to resolve the BBB complaint rather than his first lawsuit against Spireon GPS. Spireon, Inc. argued that Johnson lacked a good faith basis or substantial justification for filing the second lawsuit and, therefore, that Spireon, Inc. was entitled to fees incurred in defending against it.

Johnson's counsel responded that, even if his claims ultimately lacked merit because they were barred by res judicata, they did not necessarily lack substantial justification. He argued that, given the events surrounding the termination of service by Spireon, Inc., whether his second lawsuit was barred by res judicata was at least fairly debatable.

As discussed below, the court found that Johnson's claims were maintained in "bad faith without substantial justification." It awarded Spireon, Inc. $84,321, finding that the requested fees were fair and reasonable. The court entered an order against Johnson to that effect on April 16, 2024. Johnson's counsel requested to withdraw his appearance, which the court granted.

The next day, Johnson filed a pro se Motion to Vacate Judgment and/or to Reconsider Granting Defendant's Motion for Award of Attorneys' Fees. Spireon, Inc. opposed the motion, and the court denied Johnson's motion. Johnson timely noted an appeal.

We will provide additional facts as necessary in the discussion.

23

## DISCUSSION

Johnson does not challenge the circuit court's dismissal of the amended complaint based on res judicata. Instead, he argues that the dismissal should be vacated because the court lacked subject matter jurisdiction to rule on Spireon, Inc.'s motion to dismiss.

Johnson extends the jurisdictional argument to the award of fees. Additionally, he challenges the court's decision on the merits, claiming that the court (1) erred in finding that he brought and maintained the second lawsuit in bad faith and without substantial justification; and (2) abused its discretion in awarding Spireon, Inc. $84,321 in fees.

We will first address the jurisdictional challenges.

### A.

### Subject Matter Jurisdiction

Johnson argues that the circuit court never acquired subject matter jurisdiction over this case because, when the District Court transferred the case to the circuit court upon his jury demand, the amount in controversy was insufficient to confer jurisdiction on the circuit court. Because he was not entitled to a jury trial, Johnson argues that the circuit court never obtained subject matter jurisdiction over his case. Accordingly, he maintains that both the dismissal of the amended complaint and the award of attorneys' fees are a nullity and must be vacated.

Spireon, Inc. does not dispute that the circuit court initially lacked subject matter jurisdiction. It contends, however, that the circuit court later acquired jurisdiction when Johnson amended his complaint in that court, which superseded his original complaint, and added counts for equitable and declaratory relief, over which the District Court had no

24

jurisdiction. According to Spireon, Inc., by filing the amended complaint in the circuit court, Johnson effectively "elect[ed] to file suit" in the circuit court under § 4-402(d)(1)(i) of the Courts and Judicial Proceedings Article ("CJP"). Separately, Spireon, Inc. contends that the circuit court had the inherent authority to award attorneys' fees under Rule 1-341 because such a proceeding under the Rule is collateral to the merits of the claims.

## 1. The Circuit Court Lacked Subject Matter Jurisdiction Over Johnson's Claims.

Subject matter jurisdiction "is the court's ability to adjudicate a controversy of a particular kind." *Beckwitt v. State*, 477 Md. 398, 421 (2022) (cleaned up). "[L]ack of subject matter jurisdiction may be raised at any time, including initially on appeal," and "need not be raised by a party, but may be raised by a court *sua sponte*." *Derry v. State*, 358 Md. 325, 334 (2000) (cleaned up and citation omitted); *see also* Md. Rule 8-131(a) ("The issue[ ] of jurisdiction of the trial court over the subject matter . . . may be raised in and decided by an appellate court whether or not raised in and decided by the trial court.").

Maryland's circuit courts are courts of original general jurisdiction. *Powell v. State*, 324 Md. 441, 446 (1991); *Parker v. State*, 337 Md. 271, 287 n.11 (1995) (citing CJP § 1-501). The circuit court has jurisdiction "in all civil and criminal cases within its county . . . except where by law jurisdiction has been limited or conferred exclusively upon another tribunal." CJP § 1-501.

One such statute conferring jurisdiction exclusively upon another tribunal is found in CJP § 4-401, which provides that, with limited exceptions, "the District Court has exclusive original civil jurisdiction" over tort and contract actions where "the debt or

25

damages claimed do not exceed $30,000, exclusive of . . . interest, costs, and attorney's fees," if applicable.[11]

Limited exceptions to the District Court's exclusive original jurisdiction are outlined in CJP § 4-402. For instance, the District Court does not have "equity jurisdiction," subject to certain exceptions. CJP § 4-402(a). The District Court also "does not have jurisdiction to render a declaratory judgment." CJP § 4-402(c). In addition, "if the amount in controversy exceeds $5,000, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees[,]" a "plaintiff may elect to file suit in the District Court or in a trial court of general jurisdiction [i.e., a circuit court]," subject to certain exceptions. CJP § 4-402(d)(1)(i).

Actions that are tried in the District Court are tried without a jury. *Pickett v. Sears, Roebuck & Co.*, 365 Md. 67, 89 (2001). However, a party may demand a jury trial so long as the demandant is entitled to one. *Vogel v. Grant*, 300 Md. 690, 696 (1984). "Maryland Rule 3-325 sets forth the procedure for requesting a jury trial, requiring the parties to file a separate written demand for a jury trial and providing the time requirements for the demand." *McDermott v. BB & T Bankcard Corp.*, 185 Md. App. 156, 165 (2009). "A timely demand for a jury trial pursuant to Rule 3-325 vests jurisdiction in the circuit court when the amount in controversy exceeds [$25,000]." *Id.*

---

[11] In 2007, the General Assembly increased the threshold from $25,000 to $30,000. 2007 Md. Laws 953–54. This threshold was in effect at the time Johnson demanded a jury.

26

"The legislature has made clear, however, that there is no right to a jury trial for civil claims in the District Court that do not exceed [$25,000]." *Id.* CJP § 4-402(e)(1) provides:

> In a civil action in which the amount in controversy *does not exceed $25,000*, exclusive of attorney's fees if attorney's fees are recoverable by law or contract, a party may not demand a jury trial pursuant to the Maryland Rules.

(emphasis added).

We agree that the circuit court never acquired subject matter jurisdiction over Johnson's claims. The original complaint filed in the District Court in the second lawsuit sought $25,000, exclusive of costs and fees—that is, the amount sought "d[id] not exceed $25,000." CJP § 4-402(e)(1). Because the amount in controversy did not exceed $25,000, Johnson was not entitled to a jury trial. Accordingly, the circuit court never acquired jurisdiction over his claims when Johnson improperly demanded a jury and the District Court transferred the case. Under these circumstances, the amended complaint Johnson filed in the circuit court was a nullity.

In *McDermott v. BB & T Bankcard Corp.*, 185 Md. App. 156 (2009), we addressed a related issue. The plaintiff in that case, BB & T, filed a collection action in the District Court for an amount less than the amount that would have entitled a party to a jury trial in the circuit court (then $10,000). 185 Md. App. at 166. The defendants, the McDermotts, demanded a jury trial. *Id.* at 159. The District Court transferred the case to the circuit court, where the defendants filed counterclaims seeking damages in excess of $1,000,000. *Id.* at 160–61. BB & T filed a motion to strike their jury demand, arguing that the requisite amount in controversy of $10,000 was not met. *Id.* at 160. The circuit court granted the

motion and remanded the case to the District Court. *Id.* at 161–62. The defendants appealed. *Id.* at 162.

The defendants argued that the counterclaims they subsequently filed in the circuit court seeking over $1,000,000 were sufficient to entitle them to a jury trial. *Id.* at 166. This Court rejected the argument for several reasons, the primary reason being that the circuit court could not acquire jurisdiction by way of a jury demand in the District Court if the demandant was not entitled to a jury trial:

> Initially, the counterclaims filed in the circuit court were of no effect. As explained, because the complaint did not seek damages exceeding [the amount that would entitle a party to a jury trial], and, therefore, the [defendants] were not entitled to a jury trial, the circuit court never acquired jurisdiction over this claim. *Under these circumstances*, the filings in the circuit court were a nullity . . . .

*Id.* at 167 (emphasis added). A second reason this Court rejected the defendants' argument was that "even if the counterclaims filed in the circuit court were not null and void . . . counterclaims should not be considered in determining whether the amount in controversy requirement is satisfied, particularly when the counterclaims were filed after the case was improperly transferred to the circuit court." *Id.*

Spireon, Inc. argues that *McDermott* is distinguishable from the instant case. In doing so, it focuses on this Court's second rationale, explaining that, unlike the counterclaims filed by the defendants, Johnson, the plaintiff here, filed an amended complaint in the circuit court after the jury demand, which superseded the original complaint and contained claims over which the circuit court had exclusive jurisdiction. The distinction is unavailing because it overlooks the primary holding in *McDermott* that a

28

pleading filed in the circuit court after an improper jury demand is null and void. By extension, the amended complaint here was a nullity. As a result, the judgment of dismissal in this case was also null and void. *See*, *e.g.*, *Bromberg v. State*, --- Md. App. ---, No. 900, Sept. Term 2023, slip. op. at 10–13 (filed May 30, 2025) (holding, in a criminal case, that the circuit court lacked subject matter jurisdiction over the charges due to the defendant's improper demand for a jury trial, rendering the judgments of conviction entered in the circuit court null and void).

For the reasons stated, we shall vacate the judgment of dismissal of the amended complaint and remand for the circuit court to strike the demand for a jury trial and transfer the case to the District Court for further proceedings.[12] *See McDermott*, 185 Md. App. at 169 (affirming the circuit court's order striking the jury demand and remanding the case to the District Court).

### 2. The Circuit Court Retained Authority to Award Attorneys' Fees Under Rule 1-341.

Our decision regarding the court's lack of subject matter jurisdiction over Johnson's claims does not lead to the same conclusion in the context of Rule 1-341 proceedings. Despite Johnson's argument to the contrary, the holding in *McDermott* regarding the nullity of pleadings after an improper jury demand does not extend to all proceedings in a civil action. This Court noted that "under [the] circumstances" in *McDermott*, the counterclaims filed in the circuit court were a nullity. 185 Md. App. at 167. In other words, we implied

---

[12] Since the amended complaint was a nullity, the original complaint remains the operative pleading. Our holding should not be interpreted as indicating approval of the claims made in the original complaint. We do not address the merits of those claims.

29

that there may be situations where this might not be the case. We hold that a proceeding

under Rule 1-341 represents one such situation. We explain.

Maryland Rule 1-341 sets forth "the remedial authority of the court in any civil

action to require a party to pay an opposing party's attorney's fees for unjustified

proceedings." *Christian v. Maternal-Fetal Med. Assocs. of Md., LLC*, 459 Md. 1, 18 (2018).

Rule 1-341(a) provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, on motion by an adverse party, may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it.

The Rule is "intended to prevent parties and lawyers from *abusing* the judicial

process by filing or defending actions and proceedings 'without substantial justification'

or 'in bad faith.'" *Legal Aid Bureau, Inc. v. Farmer*, 74 Md. App. 707, 722 (1988) (citation

omitted).

> Maryland Rule 1-341 is not, and never was intended, to be used as a weapon to force persons who have a questionable or innovative cause to abandon it because of a fear of the imposition of sanctions. Rule 1-341 sanctions are judicially guided missiles pointed at those who proceed in the courts without any colorable right to do so.

*Legal Aid Bureau, Inc. v. Bishop's Garth Assocs. Ltd. P'ship*, 75 Md. App. 214, 224 (1988).

Rule 1-341 is similar to its federal counterpart, Rule 11 of the Federal Rules of Civil

Procedure. *See Johnson v. Baker*, 84 Md. App. 521, 527 n.4 (1990) ("The federal analogue

to [Rule 1-341] in the Federal Rules of Civil Procedure is Rule 11 . . . .").[13] Rule 11 authorizes federal district courts to impose sanctions on attorneys and parties who file pleadings not reasonably well-grounded in fact or law and for any improper purpose. In other words, the primary objective of both rules is the same: to deter litigation abuse. *Compare In re Kuntsler*, 914 F.2d 505, 522 (4th Cir. 1990) ("[I]t is clear that the primary, or 'first' purpose of Rule 11 is to deter future litigation abuse."), *with Worsham v. Greenfield*, 435 Md. 349, 369 (2013) ("It is clear from the history of the Rule, and the case law interpreting it, that Rule 1-341 was intended to function primarily as a deterrent [against abusive litigation].").

Previously, we looked to federal case law interpreting Rule 11 for guidance in interpreting Maryland Rule 1-341. In *Litty v. Becker*, 104 Md. App. 370 (1995), we quoted *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), in holding that a proceeding under Rule 1-341, like Rule 11, is an "independent proceeding supplemental to the original proceeding and a trial court is not deprived of jurisdiction" whenever costs are sought. *Litty*, 104 Md. App. at 376 (quoting *Cooter & Gell*, 496 U.S. at 395).

> Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be

---

[13] Rule 11 is not a precise analogue for Rule 1-341. "Unlike Rule 11 of the Federal Rules of Civil Procedure, Rule 1-341 is not punitive in nature[,]" *Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 105 (1999), and "does not provide for a monetary award to punish a party that misbehaves[,]" *Major v. First Va. Bank-Cent. Md.*, 97 Md. App. 520, 530 (1993). Nor is the rule "intended to simply shift litigation expenses based on relative fault." *Worsham v. Greenfield*, 435 Md. 349, 368–69 (2013) (quoting *Zdravkovich v. Bell Atl.-Tricon Leasing, Corp.*, 323 Md. 200, 212 (1991)).

appropriate. Such a determination may be made after the princip[al] suit has been terminated.

*Id*. at 375–76 (quoting *Cooter & Gell*, 496 U.S. at 396).

In *Cooter & Gell*, the U.S. Supreme Court determined that the voluntary dismissal of a lawsuit did not deprive the trial court of jurisdiction to entertain a motion for sanctions under Rule 11. 496 U.S. at 398. The Court stated, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Id.* at 395. It explained the policies underlying the decision:

> The filing of complaints, papers, or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction. As noted above, a voluntary dismissal does not eliminate the Rule 11 violation. Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal.

*Id.* at 398.

No cases in Maryland have addressed the issue presented by Johnson—specifically, whether a court can impose sanctions even if it lacks subject matter jurisdiction over a plaintiff's claims. Therefore, we turn to federal case law for guidance once again. *See Litty*, 104 Md. App. at 375 ("[W]e turn to the federal courts' treatment of [Rule] 11 in cases similar to the one at hand.").

The U.S. Supreme Court answered this question directly in *Willy v. Coastal Corp.*, 503 U.S. 131 (1992). There, the petitioner argued that the district court's Rule 11 sanctions against him "must be aborted because at a time after the sanctionable conduct occurred, it was determined by the Court of Appeals that the [d]istrict [c]ourt lacked subject-matter

jurisdiction." *Id.* at 137. Although the Court acknowledged that "[a] final determination of lack of subject-matter jurisdiction of a case in a federal court . . . precludes further adjudication of it[,]" it recognized that "such a determination *does not automatically wipe out all proceedings* had in the district court at a time when the district court operated under the misapprehension that it had jurisdiction." *Id.* (emphasis added). Notably, the Court observed that the sanctions order challenged in that case was "one that is collateral to the merits." *Id.*

Citing *Cooter & Gell*, the U.S. Supreme Court reiterated that Rule 11 sanctions are "collateral to the merits" because they "do[] not signify a [trial] court's assessment of the legal merits of the complaint[,]" but instead require courts to answer the distinct question of "whether the attorney has abused the judicial process[.]" *Id.* at 137–38 (quoting *Cooter & Gell*, 496 U.S. at 396). Consequently, Rule 11 rulings "do[] not raise the issue of a [trial] court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." *Id.* at 138. The unanimous Court concluded that "[t]he interest in having rules of procedure obeyed . . . does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction." *Id.* at 139; *accord Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1009 (4th Cir. 2014) (holding that district court retained jurisdiction to impose Rule 11 sanctions after remanding action to state court, and appellate court could review the district court's determination regarding imposition of sanctions in such a circumstance).

Given the rules' common purpose of deterring abusive litigation, we see no reason why the same rationale underlying the Supreme Court's holding in *Willy* would not also apply to orders granting relief under Rule 1-341, which we have recognized as an

"independent proceeding supplemental to the original proceeding[.]" *Litty*, 104 Md. App. at 376 (citation omitted). Accordingly, we hold that the circuit court's lack of subject matter jurisdiction over Johnson's claims did not deprive the court of its remedial authority to consider Spireon, Inc.'s motion for attorneys' fees under Rule 1-341.

We now turn to Johnson's additional arguments challenging the circuit court's award of attorneys' fees under Rule 1-341.

## B.

### Corporations and Associations Article § 7-301

Johnson argues that Spireon, Inc. was barred from seeking an award for attorneys' fees under Rule 1-341 because the Corporations and Associations Article prohibited it from doing business in Maryland and maintaining a suit in this State. CA § 7-202(a) requires that, "before doing any interstate or foreign business in this State, a foreign corporation shall register with the [SDAT]." CA § 7-301 provides that, "[i]f a foreign corporation is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of [§ 7-202], *neither the corporation nor any person claiming under it may* *maintain a suit* in any court of this State[.]" (Emphases added). Johnson asserts that Spireon, Inc. could not maintain suit against him because it was an unregistered foreign corporation.

Relying on *Litty*, 104 Md. App. at 376, he argues that, since a Rule 1-341 motion is an "independent proceeding supplemental to the original proceeding[,]" CA § 7-301 bars

Spireon, Inc. from seeking attorneys' fees under that Rule.[14] Johnson's reliance on *Litty* is unavailing. We indeed described a proceeding under Rule 1-341 as "independent" from the original proceeding, *id.* at 376; however, at no point in *Litty* did this Court hold that such a proceeding constituted a "suit."

Even if we assume, arguendo, that Spireon, Inc. was an unregistered foreign entity, the plain language of CA § 7-301 and Rule 1-341 does not support Johnson's arguments. We do not equate the term "suit" under the Corporations and Associations Article with a proceeding under Rule 1-341. *See* Md. Rule 1-202(x) (defining "proceeding" as "any part of an action"). While "suit" is not defined in the Corporations and Associations Article, our courts have described it as a "lawsuit" or "original action." *See A Guy Named Moe, LLC v. Chipotle Mexican Grill of Colo., LLC*, 223 Md. App. 240, 247 (2015) (explaining that, under analogous closed-door statute applicable to limited liability companies, "[a] petition for judicial review of an administrative decision filed in the circuit court is a 'suit'" because "it is an 'original action'") (citation omitted); *accord In re Cricket Wireless, LLC*, 259 Md. App. 44, 69 (2023) (defining "suit" as "an action at law or equity brought in a court having jurisdiction over the subject matter[,]" in the context of CJP § 5-107).

---

[14] As a threshold matter, Spireon, Inc. responds that Johnson did not preserve this contention because he did not raise it in either his opposition to Spireon, Inc.'s request for sanctions or at the Rule 1-341 hearing. We conclude that Johnson sufficiently preserved the argument by way of his January 2, 2024 Response in Opposition to Spireon, Inc.'s Motion to Dismiss First Amended Complaint and Request for Attorneys' Fees. We therefore address whether CA § 7-301 precludes unregistered foreign corporations from seeking attorneys' fees in this State under Rule 1-341.

35

The Corporations and Associations Article uses "suit" and "proceeding" alongside one another, indicating they are not synonymous. *See, e.g.*, CA § 7-103(1) (providing that maintaining, defending, or settling an "action, *suit*, claim, dispute, or administrative or arbitration *proceeding*" does not constitute doing intrastate business in this State) (emphasis added); CA § 1-401(a) ("Service of process on the resident agent of a corporation . . . constitutes effective service of process . . . in any action, *suit*, or *proceeding* . . . .") (emphasis added). "[W]hen a legislature uses different words, especially in the same section or in a part of the statute that deals with the same subject, it usually intends different things." *Drew v. First Guar. Mortg. Corp.*, 379 Md. 318, 332 (2003) (citation omitted). Notably, CA § 7-301 prohibits the foreign corporation from maintaining "a suit"; it does not prohibit the foreign corporation from initiating or maintaining a "proceeding" in connection with an existing suit.

Moreover, Johnson overlooks the plain language of Rule 1-341, which states in pertinent part:

> *In any civil action*, if the court finds that the conduct of *any party* in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, *on motion* by an adverse party, may require the offending party . . . to pay to the adverse party the costs of the proceeding and the reasonable expenses . . . .

Md. Rule 1-341(a) (emphasis added). A Rule 1-341 proceeding is triggered by filing a "motion" in an existing civil action, not by initiating a lawsuit or original action. *See* Md. Rule 1-202(a) (defining "action" as "collectively all the steps by which a party seeks to enforce any right in a court"). Furthermore, "any party" that maintains or defends any

36

proceeding in the civil action is subject to Rule 1-341. There is no limitation regarding whether such a party is an unregistered foreign corporation.

Finally, adopting Johnson's reading of CA § 7-301 would lead to illogical results. Under Johnson's interpretation, the statute permits a plaintiff to sue an unregistered entity while preventing that same defendant from invoking Rule 1-341 if a proceeding is maintained in bad faith or without substantial justification. The result would incentivize enterprising plaintiffs and their attorneys to maintain lawsuits in bad faith or without substantial justification against unregistered entities without consequences. Such an untenable outcome could not have been the intent of the Rules Committee in promulgating Rule 1-341 or of the General Assembly in enacting CA § 7-301. *See Pickett*, 365 Md. at 79 (explaining that "[t]he words of the rule must also be construed so as not to yield a result which is unreasonable, absurd, or illogical"); *see also Worsham*, 435 Md. at 369 ("It is clear from the history of the Rule, and the case law interpreting it, that Rule 1-341 was intended to function primarily as a deterrent.").

## C.

### Bad Faith and Lack of Substantial Justification

Before awarding sanctions under Rule 1-341, the trial court "must make two separate findings that are subject to scrutiny under two related standards of appellate review." *Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267 (1991); *accord Garcia v. Foulger-Pratt Dev., Inc.*, 155 Md. App. 634, 676–77 (2003); *Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 104–05 (1999). "First, the [court] must find that the proceeding was maintained or defended in bad faith and/or without substantial justification. This finding

will be affirmed unless it is clearly erroneous or involves an erroneous application of law." *Inlet Assocs.*, 324 Md. at 267. An appellate court reviews the evidence in a light most favorable to the prevailing party. *Christian*, 459 Md. at 21. Second, if the court finds a claim was pursued in bad faith or without substantial justification, it should "exercise discretion in deciding, in light of those findings, whether costs and/or attorney's fees should be awarded." *Inlet Assocs.*, 324 Md. at 266. We review this determination for an abuse of discretion. *Id.* at 268.

Bad faith "exists when a party litigates with the purpose of intentional harassment or unreasonable delay." *Toliver v. Waicker*, 210 Md. App. 52, 71 (2013) (quoting *Barnes*, 126 Md. App. at 105). To make a finding of bad faith, the court would have had to conclude that a party acted "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet Assocs.*, 324 Md. at 268. Significantly, an award of attorneys' fees is not restricted to cases where the action is *filed* in bad faith but may also be found in the *conduct* of the litigation. *Optic Graphics, Inc. v. Agee*, 87 Md. App. 770, 789 (1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). An award of attorneys' fees for bad faith under Rule 1-341 "is an extraordinary remedy, intended to reach only intentional misconduct. The requisite intent, although sometimes difficult to prove, and more often than not provable only by inference from the surrounding circumstances, must nonetheless be proved." *Talley v. Talley*, 317 Md. 428, 438 (1989).

For a claim to lack substantial justification within the meaning of Rule 1-341, "a party must have no reasonable basis for believing that the claims would generate an issue of fact for the fact finder, and the claim or litigation position must not be fairly debatable,

must not be colorable, or must not be within the realm of legitimate advocacy." *Christian*, 459 Md. at 22 (cleaned up). In determining whether a claim lacks substantial justification, however, "the lack thereof cannot be found exclusively on the basis that 'a court rejects the proposition advanced by [the litigant] and finds it to be without merit.'" *Id.* at 25 (quoting *State v. Braverman*, 228 Md. App. 239, 260 (2016)).

### 1. Proceedings Below

The court found that Johnson brought and maintained the second lawsuit in "bad faith without substantial justification." The court commented on Johnson's relative sophistication in legal matters, noting that he had received paralegal training. Recounting the facts and procedural history in the first lawsuit above, the court found that Johnson was aware that his interactions with Spireon, Inc. concerned the attempted settlement of the lawsuit against Spireon GPS, rather than the BBB complaint. The court remarked that, based on the filings in the District Court since the BBB complaint was submitted, there was "no way" that Johnson could have believed the offer of the new device and subscription was intended to resolve the BBB complaint.

Despite the resolution of the first lawsuit, in which Johnson secured a judgment after rejecting a settlement offer that included the subscription, the court determined that he filed the second lawsuit to achieve a "double recovery." The court found that this was "where the bad faith c[ame] in" and concluded that Johnson had no reasonable basis to pursue the claims in the second suit.

The court made additional findings regarding Johnson's filings after he filed the original complaint in the second lawsuit. When Spireon, Inc. filed a motion to dismiss

Johnson's original complaint, he responded by filing an amended complaint. This amended pleading necessitated another motion to dismiss from Spireon, Inc.

The court found that following this, Johnson kept "filing motion after motion after motion" "back-to-back," which required multiple attorneys from Spireon, Inc. to respond. The court determined that Johnson's discovery requests did not comply with the discovery rules and that his motions for immediate sanctions were improperly filed. Regarding his attempt to join individual defendants, the court found that none of these individuals were related to the amended complaint or any other matters at hand. Additionally, the court found that Johnson's motion to refer the case to the Attorney General was inappropriate and did not find Johnson's testimony regarding his justification for filing the motion credible.

Ultimately, the court concluded that, based on Johnson's actions, he initiated and maintained the second lawsuit in "bad faith without substantial justification." The court further determined that Johnson's filings reflected a "clear, serious abuse of judicial process."

### 2. Analysis

Johnson contends that the circuit court erred in its finding, stating that its determination was based "solely" on the fact that the claims in the amended complaint were barred by res judicata. He urges this Court to reexamine the elements of res judicata and cites related case law to demonstrate how the court incorrectly found that he pursued the second lawsuit in bad faith and without substantial justification.

Initially, we note that the record does not support Johnson's claim that the court made its findings "solely" because the claims in the second lawsuit were barred by res

judicata. As mentioned earlier, before hearing Johnson's testimony at the Rule 1-341 hearing, the court acknowledged that dismissing the amended complaint on res judicata grounds would not automatically lead to a conclusion that Johnson pursued the second lawsuit in bad faith or without substantial justification. Furthermore, the court prefaced its oral ruling by stating that its assessment under Rule 1-341 was not based on its prior dismissal of the amended complaint on res judicata grounds. Instead, the court indicated that it evaluated the criteria under Rule 1-341 based on Johnson's explanations for filing the second lawsuit and the record of the District Court from the first lawsuit.

As previously stated, Maryland law "mandates that we affirm the trial judge's finding unless clearly erroneous." *Major v. First Va. Bank-Cent. Md.*, 97 Md. App. 520, 531 (1993). "Unless the factual findings of the trial court are clearly erroneous, an appellate court may not arrive at different factual conclusions. If there is any competent material evidence to support the factual findings of the trial court, those findings cannot be held to be clearly erroneous." *Id.* (quoting *Nixon v. State*, 96 Md. App. 485, 491–92 (1993)). Accordingly, we shall not reanalyze res judicata and the cases cited. Instead, we shall review the court's findings of fact and examine the record for evidence supporting the findings. *See id.* (refusing to reanalyze trial court's assessment of plaintiff's RICO and fraud counts in evaluating whether the court erred in finding that the claims were filed without substantial justification).

Although Johnson challenges the findings of bad faith and lack of substantial justification, his arguments do not differentiate between the two. Instead, his argument focuses on the court's finding of a lack of substantial justification. He argues that bringing

41

the second lawsuit and defending against Spireon, Inc.'s motion to dismiss on res judicata grounds was reasonable and within the realm of legitimate advocacy, asserting that his claims were fairly debatable. In other words, he merges his bad-faith challenge with his argument regarding the finding of a lack of substantial justification based on res judicata.

However, as the Supreme Court of Maryland has explained, although a finding of no substantial justification *may* overlap with a finding of bad faith, "the two prongs operate disjunctively[.]" *Christian*, 459 Md. at 21. As previously stated, "bad faith" means "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet Assocs.*, 324 Md. at 268. "This definition is consistent with frequent dictionary definitions of 'bad faith,' which emphasize dishonest motivation." *MCB Woodberry Dev., LLC v. Council of Owners of Millrace Condo., Inc.*, 253 Md. App. 279, 307 (2021).

Although a finding that a cause of action was brought or maintained without substantial justification requires an examination of the merits, a finding of bad faith does not necessarily involve such an examination. *Bohle v. Thompson*, 78 Md. App. 614, 639 (1989). Moreover, "a trial court has inherent power to impose sanctions for *continuing* an action vexatiously, wantonly, or for oppressive reasons." *Needle v. White, Mindel, Clarke & Hill*, 81 Md. App. 463, 474 (1990) (emphasis added). In other words, a finding of bad faith is not restricted to cases where the action is *filed* in bad faith; it may be found in the *conduct* of the litigation. *Johnson*, 84 Md. App. at 531. Generally, misusing a pleading amounts to bad faith. *Id.*

While the court concluded that Johnson brought and maintained the second lawsuit in "bad faith without substantial justification," its remarks during the oral ruling indicated a greater emphasis was placed on its finding of bad faith. In reviewing the evidence in the light most favorable to the prevailing party, we hold that the court did not clearly err in finding that Johnson brought and maintained the second lawsuit against Spireon, Inc. in bad faith.

The court found that Johnson initiated the second lawsuit to achieve a "double recovery" from Spireon, Inc., and the evidence in the record supports this conclusion. Johnson attempted to settle the first lawsuit, for which he received a new device and subscription. He dismissed the first lawsuit under stipulated terms under Rule 3-506(b). This meant he could reopen the action "to enforce the stipulated terms through the entry of judgment or other appropriate relief." Md. Rule 3-506(b). He chose the first option and obtained an entry of judgment against Spireon GPS, which was subsequently satisfied.

After receiving payment in satisfaction of the judgment, Johnson filed a second lawsuit, this time against Spireon, Inc., without disclosing in the original complaint that the alleged issues relating to the new device and its associated subscription stemmed from the settlement efforts in the first lawsuit. When Spireon, Inc. moved to dismiss the case, citing res judicata grounds, Johnson amended his complaint to change the factual basis and reframe his claims.

The filing of the second lawsuit and the manner and substance of Johnson's subsequent filings provided circumstantial, if not direct, evidence for the court to infer bad faith on his part. Contrary to Johnson's claim that the court failed to assess each of the

43

relevant filings, the court did evaluate them, as recounted above. The court rejected Johnson's explanations for why he filed the second lawsuit and various filings therein, finding his testimony to be not credible. There was evidence supporting the court's finding that he brought and maintained the second lawsuit in bad faith. Consequently, we cannot say that the court clearly erred in making that finding.[15]

We conclude that the court did not err in finding bad faith under that prong of Rule 1-341. Because "the two prongs operate disjunctively[,]" *Christian*, 459 Md. at 21, we need not address the court's finding that Johnson maintained the suit without substantial justification.

## D.

### Amount of Award

"Maryland courts have historically left the determination of the amount of the award under Rule 1-341 to the discretion of the trial judge to find according to his or her 'own knowledge of the case and the legal effort and expertise required' and the affidavits of the parties." *Jenkins v. Cameron & Hornbostel*, 91 Md. App. 316, 336 (1992) (citation omitted). Among the required findings to support the award, a court must find "that the fees requested by the aggrieved party are reasonable." *Christian*, 459 Md. at 31. "The party

---

[15] Johnson argues that the court's denial of Spireon, Inc.'s motion for a pre-filing injunction in January 2024 somehow prevented Spireon, Inc. from seeking relief under Rule 1-341. However, Johnson incorrectly assumes that such an order immunized him from a later finding of bad faith regarding subsequent filings. *See, e.g.*, *Johnson*, 84 Md. App. at 530 (rejecting notion that plaintiff was entitled to continue action because he had one appeal as of right; explaining that he appeared to assume erroneously that an appeal of right can legitimize and give substance to an action that is otherwise without merit).

seeking an award of attorney[s'] fees bears the burden of demonstrating the reasonableness of the attorney[s'] fees sought." *Id.*

In determining the amount of attorneys' fees to impose on a party, the court may consider several factors, such as

> evidence submitted by counsel showing time spent defending an unjustified or bad faith claim or defense, the judge's knowledge of the case and the legal expertise required, the attorney's experience and reputation, customary fees, and affidavits submitted by counsel.

*Id.* (quoting *Major*, 97 Md. App. at 540). "The trial court enjoys a large measure of discretion in fixing the reasonable value of legal services." *DeLeon Enters., Inc. v. Zaino*, 92 Md. App. 399, 419 (1992) (citation omitted). "So long as the imposed fees are not arbitrary, the court will not have abused its discretion." *Christian*, 459 Md. at 32; *accord Estate of Castruccio v. Castruccio*, 247 Md. App. 1, 42 (2020) ("The trial court's determination of the reasonableness of attorney[s'] fees is a factual determination within the sound discretion of the court and will not be overturned unless clearly erroneous." (cleaned up and citation omitted)).

### 1. Proceedings Below

Spireon, Inc. supported its Motion for Attorneys' Fees with an affidavit prepared by Ms. Mahar. The affidavit stated that Ms. Mahar was a partner at Haynes and Boone, LLP, was admitted to practice law in 1995, and served as the lead counsel in the case. Three other attorneys also worked on the case: one who was admitted to practice in 2007, and two associates who were admitted in 2022 and 2023, respectively. Ms. Mahar's hourly rate for this case was $750, while the other attorneys' hourly rate was $400.

45

Ms. Mahar further averred that the hourly rates for each attorney were lower than the customary fees for similar services. She provided comparison data on attorneys' fees in "the Washington metropolitan area that includes Prince George's County," showing that the rates were less than those outlined in the *Laffey* and Fitzpatrick matrices attached to her affidavit.[16]

Ms. Mahar also attached a list of time entries to her affidavit that detailed the dates, timekeepers, task activities, and hours related to the relevant filings. Between October 17, 2023, and March 12, 2024 (the date of the hearing on the motion to dismiss), Ms. Mahar recorded 66.2 hours of work, while the other attorneys collectively worked for a total of 110.1 hours on these filings. After applying a 10% courtesy discount, the final amount billed to Spireon, Inc. was $84,321.

At the Rule 1-341 hearing, Johnson's counsel asked the court to consider the "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" found in Appendix B of the Maryland Rules pertaining to the U.S. District Court for the District of Maryland. The appendix provides "Guidelines Regarding Hourly Rates" for lawyers admitted to the bar

---

[16] A fee matrix is a chart that averages rates for attorneys at different experience levels. *Urb. Air Initiative, Inc. v. Env't Prot. Agency*, 442 F. Supp. 3d 301, 322 (D.D.C. 2020). Courts in the D.C. Circuit "have relied on some version of what is known as the *Laffey* matrix." *Id.* (citation omitted); *see Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 371–72 (D.D.C. 1983) (establishing the *Laffey* matrix). The U.S. Attorney's Office's version of the *Laffey* matrix—called the Fitzpatrick matrix—is based on data for all types of lawyers from the entire D.C. metropolitan area. *Vollmann v. Dep't of Just.*, 2022 WL 1124814, at *6 n.4 (D.D.C. Apr. 14, 2022). It starts with the hourly rates approved in *Laffey* as its baseline and then adjusts those rates to account for inflation. *Id.*

for less than five years ($150-$225), for nine to fourteen years ($225-$350), and more than twenty years ($300-$475).[17]

In its oral ruling, the court stated that it had reviewed the itemized time entries and found them to be fair and reasonable given the "unusual" circumstances of the case. The court explained that the issues raised by Johnson were not "standard issues" that a layperson without legal training would typically file. As a pro se litigant with paralegal training, Johnson filed "motion after motion after motion" that Spireon, Inc. had to respond to. Following Spireon, Inc.'s motion to dismiss the original complaint, Johnson filed an amended complaint in response, prompting Spireon, Inc. to submit another motion to dismiss, which necessitated "new research" and the involvement of "more attorneys." The court noted that Spireon, Inc.'s counsel had "to keep up with all the many motions" filed "back-to-back," citing the "many issues" that prompted responses from the attorneys representing Spireon, Inc. Additionally, the court concluded that the hourly rates charged were fair and reasonable, given the nature of the legal services required and the non-standard issues raised in the filings.

---

[17] The guidelines note that "[t]hese rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees. The factors established by case law obviously govern over them." Maryland Rules, Appendix B: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. They further state that "[t]he [c]ourt recognizes that there are attorneys for whom, and cases for which, the market rate differs from these guideline rates." *Id.*

## 2. Analysis

Johnson argues that the court abused its discretion by awarding $84,321 in attorneys' fees to Spireon, Inc. He does not contest the number of hours spent by Spireon, Inc.'s attorneys or the number of attorneys assigned to the case. He does not dispute the court's finding that he filed successive motions on non-standard issues. Instead, his main argument was the alleged lack of evidence regarding the customary hourly rates for similar legal services in Prince George's County. He claims that Spireon, Inc.'s reference to prevailing hourly rate matrices[18] for the D.C. metropolitan area, which Ms. Mahar asserted in her affidavit included Prince George's County, was insufficient.

He further claims that the court did not explain why the rates in the matrices sufficiently demonstrated the customary fees in Prince George's County. In addition, he questions why the court did not accept the hourly rates outlined in the guidelines. Without citing any authority or parts of the record, he asserts that the hourly rates charged in this case were not customary in Prince George's County. Accordingly, he argues that the court clearly erred in concluding that the fees charged by Spireon, Inc.'s counsel were reasonable and, therefore, that it abused its discretion in awarding those fees.

The arguments raised are not properly before us for two reasons. First, Johnson never argued below that the hourly fees charged in the case were not customary in Prince George's County. Under Maryland Rule 8-131(a), we will ordinarily not decide an issue

---

[18] In his brief, Johnson cites only the use of the *Laffey* matrix. We will assume he also challenges Spireon, Inc.'s use of the Fitzpatrick matrix.

48

unless it plainly appears by the record to have been raised in or decided by the trial court. The purpose of this rule is to "require counsel to bring the position of his client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings." *Chimes v. Michael*, 131 Md. App. 271, 288 (2000) (citation omitted). "The rule is effectively a form of estoppel—it curbs appeals that are inconsistent with the parties' positions at trial." *Id.*

Johnson did not object to the statements made in Ms. Mahar's affidavit or the reliance on the matrices included in her affidavit. To be sure, at the hearing before the circuit court, Johnson's counsel acknowledged that the court had broad discretion in determining reasonable fees. He stated that the court could "consider within the bounds of reason really anything that you want to consider," which included "the court's own experience with attorney's fees." He requested that the court use the guidelines to assess the reasonableness of the fees but conceded that the court "can consider . . . anything," including "submissions from the parties."

Since the arguments raised on appeal regarding the customary hourly rates in Prince George's County and the court's purported failure to consider the guidelines were not properly preserved, we do not need to address them. *See Halloran v. Montgomery Cnty. Dep't of Pub. Works*, 185 Md. App. 171, 202 (2009) ("[U]nless a [party] makes timely objections in the lower court or makes his feelings known to that court, he will be considered to have waived them and he can not now raise such objections on appeal." (citation omitted)).

Second, Johnson's arguments are not adequately briefed. Maryland Rule 8-504(a)(6) requires that a brief shall contain "[a]rgument in support of the party's position on each issue." A contention can be deemed waived if an appellant in its brief raises an argument but cites no authority for its position. *Conrad v. Gamble*, 183 Md. App. 539, 569 (2008) (declining to address issue because argument was "completely devoid of legal authority" (citation omitted)).

The extent of the legal authority Johnson cites is *Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97 (1999), and *Christian v. Maternal-Fetal Medicine Associates of Maryland, LLC*, 459 Md. 1 (2018), for the uncontroversial propositions that an award of attorneys' fees must be reasonable and to summarize the types of evidence the court can consider when awarding those fees. However, he does not provide any legal authority to support the argument that the court erred in determining that the fees charged in this case were reasonable. As we have said, it is not our "responsibility to attempt to fashion coherent legal theories to support [an] appellant's sweeping claims." *Elecs. Store, Inc. v. Cellco P'ship*, 127 Md. App. 385, 405 (1999). Nor is it "our function to seek out the law in support of a party's appellate contentions." *Anderson v. Litzenberg*, 115 Md. App. 549, 578 (1997). For the reasons stated, we will not consider his arguments regarding the reasonableness of the hourly rates charged by Spireon, Inc.'s counsel. Accordingly, we cannot conclude that the court abused its discretion in granting the awarded fees.

**JUDGMENT OF CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED IN PART AND AFFIRMED IN PART; ORDER DISMISSING THE AMENDED COMPLAINT ENTERED MARCH 19, 2024 VACATED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; ORDER GRANTING ATTORNEYS' FEES AND JUDGMENT ENTERED APRIL 16, 2024 AFFIRMED. COSTS TO BE SPLIT EVENLY.**

IN THE APPELLATE COURT

OF MARYLAND

No. 317

September Term, 2024

_____

JOE JOHNSON

v.

SPIREON, INC.

_____

Friedman,
Tang,
Wright, Alexander, Jr.
  (Senior Judge, Specially Assigned),

JJ.

_____

Concurring Opinion by Friedman, J.

_____

Filed: June 27, 2025

I join the majority opinion in full.

I write separately only to underline what should be clear from even a cursory review of the majority's careful and thorough opinion: that ordinary, everyday people may bring claims—even novel claims—in the courts of Maryland without fear of owing more in attorneys' fee sanctions than the value of their original claim. Here, it is solely Mr. Johnson's bad faith conduct, in bringing and maintaining this lawsuit, that merits sanctions.